**NORTH CAROLINA ELECTRIC MEMBERSHIP CORPORATION; Haywood Electric Membership Corporation; Pitt & Greene Electric Membership Corporation; Four County Electric Membership Corporation; Piedmont Electric Membership Corporation; Halifax Electric Membership Corporation; Randolph Electric Membership Corporation; Harkers Island Electric Membership Corporation; Brunswick Electric Membership Corporation; Jones-Onslow Electric Membership Corporation; French Broad Electric Membership Corporation; Wake Electric Membership Corporation; Tri-County Electric Membership Corporation; Lumbee River Electric Membership Corporation; South River Electric Membership Corporation; Carteret-Craven Electric Membership Corporation; Central Electric Membership Corporation, Appellants,**

v.

**CAROLINA POWER & LIGHT COMPANY; South Carolina Electric & Gas Co., Appellees.**

No. 81–1057.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 6, 1981.

Decided Dec. 7, 1981.

Rehearing and Rehearing En Banc Denied Feb. 19, 1982.

Edward E. Hall, Washington, D. C. (Wallace E. Brand, Sean T. Beeny, Brand & Hall, Washington, D. C., Thomas Bolch, Raleigh, N. C., on brief) for appellants.

Robert S. Medvecky, Washington, D. C. (Michael B. Early, New York City, Stephen G. Kozey, Reid & Priest, Washington, D. C., James T. Williams, Jr., Reid L. Phillips,

Brooks, Pierce, McLendon, Humphrey & Leonard, Greensboro, N. C., on brief), for appellee South Carolina Electric & Gas Co.

Robert C. Howison, Jr., Edward S. Finley, Jr., Hunton & Williams, Raleigh, N. C., William Warfield Ross, Toni G. Allen, Lewis M. Popper, Wald, Harkrader & Ross, Washington, D. C., on brief, for appellee Carolina Power & Light Co.

Before HAYNSWORTH, Senior Circuit Judge, and BUTZNER and HALL, Circuit Judges.

K. K. HALL, Circuit Judge:

Sixteen rural electrical cooperatives and the North Carolina Electric Membership Corporation (NCEMC) sued two utility companies, Carolina Power & Light Company (Carolina Power) and South Carolina Electric & Gas (S.C. Electric), charging monopolization of electric power markets in violation of the Sherman Act, 15 U.S.C. §§ 1, 2. During discovery, the district court ruled that defendants would not be required to produce any documents relating to legislative lobbying activities because such documents were protected by the Noerr-Pennington doctrine. At plaintiffs' request, the court certified its ruling for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). We hold that the Noerr-Pennington exemption from anti-trust liability does not extend to discovery of evidence, and therefore we reverse.

*The Anti-Trust Allegations*

Plaintiff cooperatives distribute electrical power to retail customers in rural areas throughout North Carolina. The cooperatives obtain most of their wholesale or "bulk power" from generating facilities owned by S.C. Electric and Carolina Power.[1] Because of their dependence upon the two large utilities, the plaintiffs are unable to control the costs of purchasing bulk power. Thus they formed the NCEMC to investigate the possibilities of reducing costs by building separate generating facilities or purchasing bulk power elsewhere. Despite years of investigation, the NCEMC has been unable to develop alternative sources of power. Blaming this failure upon the utilities, the plaintiffs filed an anti-trust action in 1977 alleging that S.C. Electric and Carolina Power illegally blocked their attempts to generate or purchase power elsewhere.[2]

During discovery, plaintiffs requested production of "each document relating to existing, contemplated or proposed state legislation affecting the area in which an electric utility may market electric power and each document relating to contemplated or proposed federal legislation regulating the supply of electric power in bulk or power exchange services." The defendants objected on the grounds that the information was "constitutionally protected and absolutely privileged." In an order dated October 18, 1979, the district court ruled that the defendants did not have to produce the legislative material.

Plaintiffs then subpoenaed a nonparty, requesting similar political materials. The defendants filed a motion for a protective order based upon the October 18 ruling.[3] On April 30, 1980, the district judge issued a protective order encompassing (1) any documents which "directly concern the passage or implementation of proposed or existing

1. While the cooperatives are limited to distribution of power at the retail level, the defendant utilities generate power for sale at wholesale and also distribute power at the retail level to municipal customers.

2. The plaintiffs have a two-facetted anti-trust claim. First, they allege that the defendants have fixed artificially low bulk power prices, thereby making development of independent generating stations uneconomical. Second, they contend that the utilities have prevented the cooperatives from purchasing power elsewhere by horizontally controlling the market.

The plaintiffs contend that the utilities have refused them access to power exchange markets which are necessary for emergency sources of power should the cooperatives develop alternative supplies.

3. The subpoena was issued in the federal district court for the District of South Carolina, and not the Middle District of North Carolina where the litigation began. The protective order was subsequently issued in the Middle District of North Carolina.

state or federal legislation;" (2) proposed drafts of legislation; (3) letters and documents from publicity campaigns waged by the utilities to secure passage of legislation, and (4) memoranda of negotiations and discussions directly related to petitioning activities.

The district court based its decision upon the Noerr-Pennington doctrine. The court held that "unbridled discovery" would "chill" the exercise of defendant's first amendment rights, and such a chilling effect would be reason enough to prevent discovery. However, the court acknowledged that its application of Noerr-Pennington was broad, and that there was a serious question about the scope of the doctrine. Thus the court certified the order for interlocutory appeal on the issue of whether the Noerr-Pennington exemption from anti-trust violations prevents discovery of material relating to legislative activity.

### The Noerr-Pennington Doctrine

The Noerr-Pennington doctrine is an outgrowth of two anti-trust cases in the 1960s, *Eastern Railroad Conference v. Noerr Freight Co.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961) and *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). The *Noerr* case came about when the railroads attempted to beat back the competition of the trucking companies in Pennsylvania by conducting adverse publicity campaigns and by petitioning the legislature for anti-trucking statutes. Forty-one trucking companies brought suit, alleging that the railroad association was violating the monopoly provisions of the Sherman Act. The Supreme Court held that activities designed to influence legislation, including publicity campaigns, are protected by the first amendment right to petition.

Five years later the Supreme Court decided *Pennington*. In that case the United Mine Workers (UMW) sued a small mine operator for royalty payments and the operator cross claimed, alleging that the UMW and the large operators conspired to force small operators out of business in violation of federal anti-trust laws. At trial, Pennington presented evidence that the UMW and the large mine operators had jointly approached the Secretary of Labor and the Tennessee Valley Authority in furtherance of their scheme. The Supreme Court held that the district court should have instructed the jury that this legislative petitioning was not illegal. Significantly, the court stated in a footnote that the evidence may be admitted as proof of prior or subsequent transactions, if not unduly prejudicial, as long as the jury was properly instructed.[4]

Thus the Noerr-Pennington doctrine, as it has evolved, is an affirmative defense which exempts from anti-trust liability any petitioning activity designed to influence legislative bodies or governmental agencies. *See California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510–511, 92 S.Ct. 609, 611–12, 30 L.Ed.2d 642 (1972).

### Noerr-Pennington and Discovery

Appellants argue that the Noerr-Pennington doctrine applies only as a defense to the plaintiff's anti-trust action, and not as a bar to discovery of relevant materials. Moreover, they assert that the first amendment offers no rationale for prohibiting discovery of materials in an anti-trust case. Appellees counter that the district court acted within its discretion in limiting discovery and that the discovery of inadmissible materials will have a "chilling" effect upon defendant's future exercise of first amendment rights. We agree with appellants that Noerr-Pennington does not apply to discovery.

---

4. The relevant passage from *Pennington* reads: "It would of course still be within the province of the trial judge to admit this evidence, if he deemed it probative and not unduly prejudicial, under the 'established judicial rule of evidence that testimony of prior or subsequent transactions, which for some reason are barred from forming the basis for a suit, may nevertheless be introduced to show the purpose and character of the particular transactions under scrutiny.'" 381 U.S. at 670, n.3, 85 S.Ct. at 1593, n.3.

First, Noerr-Pennington is by definition an exemption from anti-trust liability, and not a bar to discovery of evidence. As noted above, the court in *Pennington* held that evidence of legislative activity, if relevant, must be accompanied by an instruction which limits the jury's consideration to non-legislative activities. 381 U.S. at 670, 85 S.Ct. at 1593. That holding presumes the admissibility of relevant evidence. If the evidence is arguably admissible, certainly it should be discoverable.

Second, the appellee's contention that the discovery of this material would have a chilling effect is without merit. In *Herbert v. Lando*, 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979), the Supreme Court ordered production of a memorandum from a producer's "behind the scenes" planning conference for a television news special. The Court held that such discovery would not have a chilling effect upon the news organization's first amendment rights. If discovery into the internal affairs of a news organization does not have a chilling effect, then neither would discovery in this case.

Finally, we think that the district court has too narrowly limited Fed.R.Civ.P. 26.[5] There is no authority for fitting the Noerr-Pennington doctrine into the "privilege" exception to the rule. Nor is there any question that discovery of this material may lead to admissible evidence. Indeed, the *Pennington* decision allows at least some of that evidence to be admitted at trial if accompanied by a proper jury instruction. Thus the limitations placed upon plaintiffs' discovery are outside the discretionary control of the district court, and therefore invalid.[6]

REVERSED.

**5.** Rule 26 states in pertinent part:

> (1) In General. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

**6.** Our decision in this case is not to be construed as a limitation upon the district court's discretion to confine discovery to reasonable bounds or to sustain objections to the production of specific documents pursuant to Rule 26(c) of the Federal Rules of Civil Procedure.