James BURKE, Petitioner,

v.

UNITED STATES of America, Respondent.

No. CV–89–1909.
Related Nos. 81–CR–439 (HB),
CV–85–3769 (HB).

United States District Court,
E.D. New York.

June 12, 1989.

Jay Goldberg, P.C., Judd Burstein, P.C., New York City, for petitioner.

Andrew J. Maloney, U.S. Atty., E.D. N.Y., Brooklyn, N.Y. by Edward H. Mc-Donald, Laura Brevetti, Douglas Grover, for respondent.

## MEMORANDUM AND ORDER

WEINSTEIN, District Judge:

James Burke, having had his 1981 conviction for conspiring to fix college basketball games affirmed, and having prosecuted various post trials challenges, brings this long delayed proceeding pursuant to 28 U.S.C. § 2255 to set aside the conviction. His contention is that Henry Hill, a key witness against him, lied at the Burke trial and received encouragement to lie from the government.

Proof of Hill's perjury rests essentially on the inherent improbability of his testimony, his pattern of lying for the government in another criminal case against Ernest Cobb and inconsistencies between the Cobb and Burke trials testimony. Proof of the government's connivance lies primarily in the government's use of Hill's agreement to testify in which Hill agreed to tell the truth—the government used this agreement to suggest to the jury that if the government believed Hill was lying it would have cancelled Hill's benefits—and the contention that the government never had any intention of punishing Hill for his lies, something both Hill and the government supposedly knew.

The gravamen of Burke's complaint is that the due process clause was violated by the government because the prosecutor at Burke's trial deceived the jury by arguing that the government's principal witness, Henry Hill, testified truthfully because of an agreement with the government pursuant to which Hill would be prosecuted if he lied, when, in fact, the prosecutor and Hill both knew that the government had no intention of ever enforcing the agreement.

In his summation on rebuttal counsel for the government stated (2534–2537):

There is [an] argument about immunity that Henry Hill is lying to please the Government, that what he is saying is a pack of lies.

Well, look at the agreement. It is in evidence. I'm going to read from one paragraph of the agreement, the part that pertains to what happens if he doesn't abide by the terms of the agreement. "This agreement will not prevent the Government from prosecuting you from perjury should it be discovered that you have given false testimony in connection with these matters." That's perjury. "In addition, in the event that you do not fully comply with all of the other terms of this understanding, that is, the immediate full and truthful disclosure of testimony, et cetera—" and it goes back and talks about all of the things in the agreement. "This agreement will be nullified should this occur and the Government will be free to prosecute you with regard to any and all violations of the Federal criminal law in which you may have participated."

So, if Henry Hill not only lies but doesn't say everything that he knows at the time to give full cooperation, the agreement is at an end and he can be prosecuted for his crimes. Here's the important point. "The Government can use against you and all statements made by you and testimony you have given prior and subsequent to the date of this agreement."

Ladies and gentlemen, if Henry Hill lies, if he doesn't cooperate with the Government and if he lies he can be prosecuted for his own crimes but he can be prosecuted on the basis of what he has testified to, what he has told the Government about. He has gotten on that witness stand and he made a complete confession under oath to the crimes that are charged here. If he is found to be lying he can be prosecuted on the basis of that testimony. You talk about motive, if anyone had a motive to tell the

truth because of this agreement it is Henry Hill.

. . . .

Henry Hill wants to stay out of jail. That's one of the primary things in his mind, he wants to stay out of jail. That's the main thing with Henry Hill but because of the immunity agreement there is only one way he can stay out of jail and that's by telling the truth.

The case and most post-trial motions were heard by Judge Henry Bramwell. Upon Judge Bramwell's taking senior status, the case was transferred to the undersigned. Whether Burke in fact did what he was charged with doing is a matter about which this court has no judgment. That he received a fair trial has now been repeatedly determined by this court and by the Court of Appeals. *See United States v. Burke,* 700 F.2d 70 (2d Cir.), *cert. denied,* 464 U.S. 816, 104 S.Ct. 72, 78 L.Ed.2d 85 (1983).

Nonetheless, to satisfy itself as to the fairness of the aspects of the case now challenged, the court has just reread Hill's direct and cross-examinations at the trial (record pages 172 to 865) as well as large portions of the summations. Hill was thoroughly cross-examined for four days (320 to 865) by five skilled and experienced defense counsel. Much of the summations were directed to the subject of Hill's credibility. His many crimes, delicts, deceits, drug abuse and disgusting life style were thoroughly explored.

In conjunction with the present 2255 proceeding, the court also conducted an evidentiary hearing at which Hill and the prosecutor testified on the issues now before the court. The matter has been thoroughly briefed and argued. The briefs include a comparison of Hill's testimony at the Burke trial with that of witnesses Perla, Mazzei, Kuhn and Hill at the Cobb trial and excerpts from the Burke record now contended to warrant a new trial.

There are inconsistencies in Hill's testimony as to details, but they are not enough to warrant a new trial at this stage of the case. Nor do we understand that the defendant so contends since they have already been found insufficient to warrant a new trial by Judge Bramwell and the Court of Appeals. They are apparently supplied now only to suggest the flavor of Hill's unreliability.

Neither Burke's attorney nor the attorneys for the other four defendants objected to the introduction of the agreement itself or to the prosecutor's arguments on summation with respect to the agreement. In fact, the belief of the witness Hill that he would be prosecuted for his crimes if a United States Attorney thought he was lying was emphasized by the defendants themselves. The following testimony was elicited on re-cross as part of the defense theory that the inducements in terms of money paid Hill by the government and provisions not to prosecute him were so great that he would say anything he thought would please the prosecutor.

Q. Mr. McDonald is the liason or contact you have with the United States Government?

A. No, I have contact with other U.S. Attorneys.

Q. All in this district?

A. No.

Q. In other districts.

A. Yes.

Q. But it's their sole—soley within their discretion whether or not you should be prosecuted in this case?

A. As long as I tell the truth I will not be prosecuted.

Q. As long as they are satisfied with what you say you will not be prosecuted, is that correct?

A. Yes.

Despite having Hill on the witness stand for six days, no one ever made an issue of the language in the agreement that is now the subject of Burke's motion. In these circumstances, the defendant's failure to earlier raise the issue would preclude consideration of his claim on direct appeal and now. Nevertheless, in the interest of fairness, the court has considered Burke's contentions.

Arguably, Burke is in procedural default for still another reason. His contention about Hill's understanding of the agreement and the government's intentions is not based on newly discovered evidence. It is an assertion that was available throughout the trial and could have been raised on his direct appeal. As defense counsel has repeatedly emphasized, the practice of not prosecuting government witnesses has been widely known for many years. His failure to raise his claim on appeal could be found to preclude him from raising it now. *United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *United States v. Brennan*, 867 F.2d 111, 119 (2d Cir.1989), *cert. denied*, — U.S. —, 109 S.Ct. 1750, 104 L.Ed.2d 187 (1989). The court has nonetheless considered the issue.

The court assumes that when the witness supports the government's case prosecutors rarely, if ever, enforce these agreements requiring a government witness to tell the truth on pain of nullification of the agreement giving the witness various benefits. Based upon the observed practice in this court, if the witness is believed to be lying as to the central elements of the case he or she is not put on the witness stand. The fact that no cases have been brought to our attention showing prosecutions of key government witnesses for perjury or revoking immunity agreements is of little practical significance.

The court believed Edward A. McDonald's testimony at the hearing that he would have enforced the agreement against the witness if he had, in the prosecution's view, lied. The court also believes, based on the testimony and the opportunity to observe Mr. McDonald on many occasions in court, that he never suggested to Hill in any way that he would condone or ignore perjury by Hill. Edward A. McDonald was a dedicated and hard-hitting prosecutor; there has never been the slightest reason to doubt his high ethical standards and devotion to the truth as he has seen it.

Hill testified at the hearing that he believed that he was obligated to tell the truth and that the agreement would have been enforced against him if the prosecutor concluded that he was lying. The court has no view as to the credibility of Hill now or at the trial. It can for the purpose of this hearing assume that he is not a credible witness and that his testimony is entitled to no weight favoring either side. It is clear, however, that none of his testimony at the hearing supports Burke's current contentions.

It is unlikely to the vanishing point of probability that any witness prepared by McDonald would have believed that McDonald was seeking lies or would condone them. McDonald is an exceptionally strong and dominating prosecutor. Even the most brazen witness would be fearful of crossing him. Whatever Hill may have thought about his obligation to tell the truth, the pressure of the prosecutor—both for tactical and ethical reasons—was for him to be candid and forthrightly truthful.

It cannot be said, as suggested by counsel for petitioner, that these agreements to be truthful clauses should be eliminated from prosecutors' witness agreement letters. They may have a useful effect in keeping some witnesses within the bounds of *veritas*. In some cases these clauses may have the opposite effect of inducing witnesses to forego admitting mistakes for fear of antagonizing a prosecutor with power to cancel the agreement not to prosecute them if they fail to tell the "truth" by changing their testimony to favor a defendant. On balance, outlawing of these clauses would not be warranted.

Informed observers of our courts recognize the great dangers posed by witnesses who are, in effect, paid for their testimony by being relieved of their own prosecution and by being given other favors (as was Hill). Aside from improper identification by witnesses, miscarriages caused by an overworked and underfunded judicial system, and the inefficiency, stupidity, ambition or venality of police, prosecutors, defense counsel and judges, lying by bought witnesses probably is responsible for the largest category of questionable convictions. *Cf.* M. Curriden, No Honor Among Thieves, ABA Journal, June 1989, p. 52. Requiring open prosecutor files, furnishing exculpatory materials, free disclosure by prosecutors under Rule 16 of the Rules of Criminal Procedure, burdens of proof, fair-

ness of our juries, and intelligent use by skilled defense counsel of available trial and evidence procedures furnish effective protection against improper convictions except in the most rare and unusual cases.

In general it is desirable not to reveal to the jury that the witness has agreed with the prosecutor to tell the truth on threat of cancellation of the agreement not to prosecute the witness if the prosecutor believes the witness is lying. The jury is likely to believe even more strongly than it otherwise does that the prosecutor is putting his own credibility behind that of the witness. *United States v. Roberts,* 618 F.2d 530, 536 (9th Cir.1980), *cert denied,* 452 U.S. 942, 101 S.Ct. 3088, 69 L.Ed.2d 957 (1981) ("the unspoken message is that the prosecutor knows what the truth is and is assuring its revelation."); *United States v. Arroyo-Angulo,* 580 F.2d 1137, 1150 (2d Cir.1978) (Friendly, J. concurring). The agreement also has undesirable hearsay elements since it implies that the same story was told by the witness to the prosecutor earlier and that there are non-judicial guarantees that the earlier story was truthful because it was investigated and believed by a responsible prosecutor.

It is the practice of a number of judges in this Court, including the undersigned, not to permit the prosecutor to bring such clauses to the attention of the jury. Forbearance by prosecutors in taking advantage of cooperation agreements to bolster the credibility of a witness seems sound.

In this instance none of the five experienced counsel for the defense thought their clients' interests were adversely affected by the prosecutor's use of the clause in his argument. None of them objected. The record supports their view that there is nothing to petitioner's present contentions of prejudice.

The motion to set aside the judgment of conviction and for a new trial is denied. The petition is dismissed.

SO ORDERED.