P. & B. MARINA, LIMITED PARTNER-SHIP, Seaview Marina Owners Corp., P.B.S. Marina, Inc. and Lee Pokoik, Plaintiffs,

v.

Michael LOGRANDE, Frank R. Jones, individually and as Town Supervisor of the Town of Islip, the Seaview Association of Fire Island, N.Y., Inc., Town of Islip, Town Board of the Town of Islip, Frank Boncore, Norman Demott, Vincent Gianni, Anne Pfifferling, individually and as Councilpersons of the Town of Islip, Robert Cimino, individually and as Town Attorney of the Town of Islip, Guy W. Germano, Steven Lotto, individually and as Assistant Town Attorney of the Town of Islip, Timothy J. Mattimore, John Doe Nos. 1–100 and XYZ Agency Nos. 1–10, Defendants.

No. 89 Civ. 3569.

United States District Court, E.D. New York.

April 11, 1991.

Lambert & Weiss, New York City by Richard S. Mills, for plaintiffs.

Paul R. Levenson, New York City by Paul R. Levenson, for defendants.

WEINSTEIN, District Judge.

On appeal, Magistrate Judge Azrack's order, requiring the appellant to produce allegedly privileged documents, is affirmed on the basis of her opinion set out below.

So ordered.

### ORDER

JOAN M. AZRACK, United States Magistrate Judge.

Plaintiffs have moved this court for an order directing defendant Seaview Association of Fire Island, New York, Inc., (Seaview), to respond a request for documents.

The court was fully briefed by the parties and oral argument was heard on February 7, 1991, followed by an *in camera* review of the challenged documents.

Plaintiffs filed this action under the Civil Rights Act of 1866, 42 U.S.C. § 1983, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, and various New York State laws, alleging a conspiracy on behalf of the defendants to interfere with the plaintiffs' operation of the P & B Marina to the point of effectively wresting control and ownership of the marina operation. In response, defendants claim in part that they are immune from suit for the alleged actions under the First Amendment right to petition by way of the *Noerr–Pennington* doctrine.[1]

In essence, the *Noerr–Pennington* doctrine immunizes firms from antitrust challenges for efforts made to influence legislative, executive, administrative, or judicial action by the government. Courts apply the doctrine in an attempt to balance the exercise of first amendment rights to petition the government that are fundamental to the political process with antitrust protection that is fundamental to the economic process. The primary exception to the immunity is the "sham" exception:

> "There may be situations in which a publicity campaign, ostensibly directed toward influencing governmental action, is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor and the application of the Sherman Act would be justified."

*Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., supra,* 365 U.S. at 144, 81 S.Ct. at 533.

▮ The immunity, therefore, is not absolute. Rather, the solicitation of governmental action may be unprotected when the litigant's "sole purpose"[2] or "principal

1. *See Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers of America v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); *California Motor*

*Transp. Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972).

2. *See New Motor Vehicle Board v. Orrin W. Fox Co.,* 439 U.S. 96, 110 n. 15, 99 S.Ct. 403, 412 n. 15, 58 L.Ed.2d 361 (1978) (stating that the peti-

purpose"[3] for making the solicitation is the commission of a wrongful act.[4] Consequently, in order to ascertain the underlying purpose of the action and, thereby, determine whether the allegedly protected actions are a mere sham, litigants cannot resist discovery regarding their petitioning activities. *Associated Container Transp. (Australia), Ltd. v. United States,* 705 F.2d 53, 58–60 (2d Cir.1983); *North Carolina Elec. Membership Corp. v. Carolina Power & Light Co.,* 666 F.2d 50, 53 (4th Cir.1981).

It is within this context that we are asked to determine whether Seaview should be compelled to respond to plaintiffs' request for various documents that allegedly reflect the petitioning activity of its members. Seaview claims the right to withhold certain documents not only to protect its First Amendment right to petition but also under the attorney-client privilege and the work-product immunity. Since it is needlessly unwieldy to address each document individually, we do so by grouping them within each of the claimed protections.

ATTORNEY–CLIENT PRIVILEGE

Communications between a client and an attorney for the purpose of obtaining legal advice are protected from involuntary disclosure by the attorney-client privilege.

> "[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice."

*Upjohn v. United States,* 449 U.S. 383, 390, 101 S.Ct. 677, 683, 66 L.Ed.2d 584 (1981).

The privilege generally applies to all communications made by the attorney to the client "if such communications contain legal advice or reveal confidential information on which the client seeks advice." *Standard Chartered Bank v. Ayala Int'l Holdings,* 111 F.R.D. 76, 79 (S.D.N.Y.1986).

The privilege protects communications that keep the attorney advised of developments regarding an ongoing matter for the purpose of rendering a legal opinion as well as express requests for legal advice. *Cuno, Inc. v. Pall Corp.,* 121 F.R.D. 198, 202 (E.D.N.Y.1988) ("[t]he privilege does not require that the request be within the four corners of the document"); *Hercules, Inc. v. Exxon Corp.,* 434 F.Supp. 136, 144 (D.Del.1977) ("It is not essential … that the request for advice be express.").

■ Communications from an attorney to his client are privileged if they tend to reveal client communications. *F.T.C. v. Shaffner,* 626 F.2d 32, 37 (7th Cir.1980). The privilege protects the substance of communications and therefore can be extended to clients, agents, and other lawyers, "if those communications reveal client communications." *United States v. (Under Seal),* 748 F.2d 871, 874 (4th Cir.1984), *cert. granted sub nom., United States v. Doe,* 469 U.S. 1188, 105 S.Ct. 954, 83 L.Ed.2d 962 (1985), *appeal after remand,* 757 F.2d 600, *vacated on other grounds,* 471 U.S. 1001, 105 S.Ct. 1861, 85 L.Ed.2d 155, *on remand,* 763 F.2d 662 (4th Cir. 1985); *In re Grand Jury Subpoenas,* 561 F.Supp. 1247, 1253 (E.D.N.Y.1982).

■ The mere existence, however, of an attorney-client relationship does not raise a presumption of confidentiality. *Sneider v. Kimberly–Clark Corp.,* 91 F.R.D. 1, 3 (N.D.Ill.1980). The party claiming the privilege has the burden of establishing the attorney-client relationship and the applicability of the privilege to the particular circumstances and discovery re-

---

tioner's "sole purpose" must be anticompetitive to bar immunity).

3. *See United States v. Otter Tail Power Co.,* 360 F.Supp. 451, 451–52 (D.Minn.1973), *aff'd mem.,* 417 U.S. 901, 94 S.Ct. 2594, 41 L.Ed.2d 207 (1974).

4. In *Coastal States Marketing v. Hunt,* 694 F.2d 1358, 1372 (5th Cir.1983), the court espoused a standard denying immunity for actions that would not have been commenced but for the injury that would accrue to a rival as a result of

the litigation process. In a similar vein Judge Posner has stated that,

> "[t]he line is crossed when [the plaintiff's] purpose is not to win a favorable judgment against a competitor but to harass him, and deter others, by the process itself—regardless of outcome—of litigating."

*Grip–Pak v. Illinois Tool Works, Inc.,* 694 F.2d 466, 472 (7th Cir.1982), *cert. denied,* 461 U.S. 958, 103 S.Ct. 2430, 77 L.Ed.2d 1317 (1983).

quests. *United States v. Tratner,* 511 F.2d 248, 251–52 (7th Cir.1975); *In re Horowitz,* 482 F.2d 72, 82 (2d Cir.), *cert. denied,* 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973); *Detection Systems, Inc. v. Pittway,* 96 F.R.D. 152, 155 (W.D.N.Y. 1982). A general allegation or blanket assertion that the privilege should apply is insufficient to warrant protection. *Radiant Burners, Inc. v. American Gas Associates,* 320 F.2d 314, 324 (7th Cir.1963); *Nutmeg Ins. Co. v. Atwell, Vogel & Sterling,* 120 F.R.D. 504, 509–10 (W.D.La.1988).

1. *Facsimile transmittal memoranda*

■ Seaview has withheld fifteen transmittal memoranda under the attorney-client privilege that do no more than state that a facsimile transmission was made between two persons. Such transmittal letters or acknowledgements of receipt that do not include legal advice nor disclose privileged matters are not subject to the attorney-client privilege. *Detection Sys. v. Pittway Corp., supra,* 96 F.R.D. at 154–155; *Foseco Int'l v. Fireline,* 546 F.Supp. 22, 24 (N.D.Ohio 1982); *Hercules v. Exxon,* 434 F.Supp. 136, 145 (D.Del.1977). At oral argument, Seaview's counsel, although claiming an absolute right to withhold, consented to waive any objections to the transmittal memoranda.

The following documents, therefore, are deemed waived by counsel:

| Date | Document Type | Author |
| --- | --- | --- |
| 03–01–84 | Fax | Hellman |
| 04–14–86 | Cover | Hellman |
| 04–28–88 | Fax | Isler |
| 07–06–88 | Fax form | Gardner |
| 07–06–88 | Fax form | Nordquist |
| 07–08–88 | Fax form | Nordquist |
| 07–08–88 | Fax form | Isler |
| 07–19–88 | Fax form | Nordquist |
| 07–19–88 | Fax form | n/a |
| 07–19–88 | Telecopier request | Nordquist |
| 07–19–88 | Telecopy | Nordquist |
| 07–19–88 | Fax form | n/a |
| 04–06–89 | Fax form | Gardner |
| 04–21–89 | Fax form | Gardner |
| 07–13–90 | Memo | Hellman |

2. *Hellman–Nordquist Correspondence*

■ Another category of documents that Seaview seeks to withhold as attorney-client communications is the intra-association correspondence between Joseph Hellman and Stephen Nordquist. By letter dated January 18, 1991, counsel for defendants asserts three grounds for applying the attorney-client privilege to these documents:

1) Hellman and Nordquist were communicating information received from association attorney Frank Isler;

2) Hellman and Nordquist were members of the association's legal committee and, hence, gave legal advice to the committee; and,

3) Hellman testified at his deposition that he had difficulty determining when he was acting as an attorney and when he was merely acting as an association member.

The majority of Hellman–Nordquist correspondence does not mention Isler nor imply that Isler was the source of the information. Where Isler's name is mentioned, the information being revealed concerns a non-association third-party to whom the information has already been disclosed. Such a disclosure to a third-party generally waives the privilege.

"Once the secrecy or confidentiality is destroyed by a voluntary disclosure to a third party, the rationale for the privilege in the first instance no longer applies."

*In re Penn Cent. Commercial Paper Litig.*, 61 F.R.D. 453, 464 (S.D.N.Y.1973).

Furthermore, the deposition of Hellman is far from unequivocal regarding his status as counsel for the association. In the one instance where he claims to have "acted as their [the association] attorney," he states that,

"When I say I acted as an attorney, I mean my firm did and a real estate lawyer in my firm attended to that matter. I suppose it is open to question whether I acted as an attorney in regards to other matter.

"I know I was never paid, which I guess is one way you can tell if you are acting as an attorney."

(Joseph Hellman Deposition dated November 21, 1990, at 9).

Although he later states "that at times it felt like I was acting as the attorney," Hellman's inability to answer the question in any definitive manner during his deposition leads this court to believe that he was merely acting as a member of the association and not attempting to hold himself out as the association's counsel.

Perhaps more on point and unequivocal is the testimony of Suzanne Lawrence Goldhirsch. Ms. Goldhirsch, a member of the association since 1969, member of the board of directors since 1980, and currently first vice-president, stated that neither Hellman nor Nordquist were association attorneys:

Q. Did Mr. Hellman ever act as attorney for the association?

A. No.

Q. Did Mr. Nordquist ever act as attorney for the association?

A. No.

(Suzanne Goldhirsch Deposition dated November 5, 1990, at 70).

There is little reason to believe that the Hellman–Nordquist documents are anything more than correspondence between association members regarding the business of the association. No evidence has been submitted nor any attempt made to equate the role of the legal committee with that of in-house counsel. The testimony of Ms. Goldhirsch unquestionably leads this court to the conclusion that the Hellman–Nordquist documents are not privileged. Therefore, the following documents are ordered to be served on plaintiffs:

| Date | Document Type | Author | Recipient |
|------|---------------|--------|-----------|
| 04–25–84 | Letter | Nordquist | Hellman |
| 05–03–84 | Letter | Nordquist | Hellman |
| 05–09–84 | Letter | Nordquist | Hellman |
| 05–15–84 | Letter | Nordquist | Hellman |
| 05–17–84 | Letter | Nordquist | Hellman |
| 05–30–84 | Letter | Nordquist | Hellman |
| 06–27–84 | Letter | Nordquist | Hellman |
| 07–11–84 | Letter | Nordquist | Hellman |
| 08–23–84 | Letter | Nordquist | Hellman |
| 09–06–84 | Letter | Nordquist | Hellman |
| 10–04–84 | Letter | Nordquist | Hellman |
| 10–22–84 | Letter | Nordquist | Hellman |

### 3. *Intra-association correspondence and Third-party correspondence*

Seaview seeks to withhold under the attorney-client privilege various documents that were written between association members which reveal no confidential information or legal advice. Some of these documents are no more than requests to pay attorneys fees with attached statement of fees. Billing records and hourly statements which do not reveal client communications are not privileged. *Colton v. United States,* 306 F.2d 633, 637–38 (2d Cir. 1962), *cert. denied,* 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963). *Accord Schachar v. American Academy of Ophthalmology, Inc.,* 106 F.R.D. 187, 192 (N.D.Ill.

1985); *In re LTV Securities Litigation*, 89 F.R.D. 595, 603 (N.D.Texas 1981); *Stastny v. Southern Bell Telephone & Telegraph Co.*, 77 F.R.D. 662, 663 (W.D.N.C.1978). The terms and conditions of an attorney's employment are also not generally held to be privileged. *In re Semel*, 411 F.2d 195, 197 (3d Cir), *cert. denied*, 396 U.S. 905, 90 S.Ct. 220, 24 L.Ed.2d 181 (1969). *Accord In re LTV Securities Litigation, supra; Bailey v. Meister Brau Inc.*, 55 F.R.D. 211, 214 (N.D.Ill.1972). Nor, are the identities of the clients privileged. *United States v. Goodman, Dunberg & Hochman P.A.*, 660 F.Supp. 929, 931 (S.D.Fla.1987). Moreover, such information generally will not be withheld absent special circumstances. *In re Two Grand Jury Subpoenae Duces Tecum v. Doe*, 793 F.2d 69, 71–72 (2d Cir.1986).

■ Seaview seeks to withhold drafts of documents sent to third-parties at the behest of the association's counsel. Drafts of letters or documents to third parties lack the requisite confidentiality to be protected

under the attorney-client privilege. *United States v. (Under Seal), supra*, 748 F.2d at 876. Moreover, the privilege is generally waived upon disclosure to third-parties of otherwise confidential materials. *In re Ampicillin*, 81 F.R.D. 377, 390 (D.D.C. 1978).

■ Some of the intra-association documents neither seek, offer, nor relate legal advice but are merely letters with attachments to attorney correspondences. Merely attaching such documents to attorney-client communications does not constitute a basis for assigning the privilege. "[T]o permit this result would abrogate the well established rule that only the communication, not the underlying facts, are privileged." *Sneider v. Kimberly–Clark Corp., supra*, 91 F.R.D. at 4 (citing 2 J. Weinstein and M. Berger, *Weinstein's Evidence*, § 503(b)(04) at 503–37 (1976)).[5]

Consequently, for the foregoing reasons, the following documents are ordered to be served on plaintiff:

| Date | Document Type | Author | Recipient |
| --- | --- | --- | --- |
| 06–04 84 | Letter | Nordquist | Siler |
| 07–18–84 | Letter | Nordquist | Siler |
| 09–12–84 | Letter | Nordquist | Siler |
| 11–06–85 | Letter | Nordquist | Gilman |
| 07–01–86 | Letter | Nordquist | Lotto |
| 09–09–86 | Letter | Nordquist | Lotto |
| 09–25–86 | Letter | Nordquist | Lotto |
| 10–06–86 | Letter | Nordquist | Diler |
| 11–21–86 | Letter | Greenfield | Stamberg |
| 04–03–87 | Letter | Nordquist | Siler |
| 09–28–87 | Letter | Gardner | Hellman |
| 10–28–87 | Letter | Yellis | Siler |
| 11–04–87 | Letter | Gardner | Driscoll |
| 04–28–88 | Letter | Kamin | Helman |
| 08–23–88 | Letter | Goldhirsch | Gilman |
| 09–21–88 | Letter | Goldhirsch | Gilman |
| 10–20–88 | Letter | Nordquist | Siler |
| 12–23–88 | Letter | Gardner | Gilman |
| 02–28–89 | Note | Goldhirsch | Gilman |
| 04–20–89 | Memo | Gardner | Logrande |

**5.** "[W]hatever the precise formulation of this standard, it is clear that when an attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged." *Brinton v. Dept. of State*, 636 F.2d 600, 602 (D.C.Cir.1980), *cert. denied*, 452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 405 (1981).

WORK PRODUCT IMMUNITY

■ The work-product immunity involves a three step process for evaluating work-product:

1) the materials must be tangible,

2) the materials must have been prepared by or for a party to the action, and

3) the materials must have been prepared in anticipation of litigation.

Fed.R.Civ.P. 26(b)(3); *In re Grand Jury Subpoenas, supra,* 561 F.Supp. at 1257.

Although the materials may meet this three part test, such materials may ultimately be discoverable if the moving party can show a "substantial need" and "undue hardship" in obtaining the equivalent information by some other means. *Id.*

■ The burden of establishing the three part test is on the party seeking the immunity. *Toledo Edison Co. v. G.A. Technologies, Inc.,* 847 F.2d 335, 341 (6th Cir.1988); *St. Paul Fire & Marine Ins. Co. v. Continental Cameras Co.,* No. 85 Civ. 8984, slip op., (S.D.N.Y. June 30, 1985); *In re Grand Jury Subpoenas, supra,* at 1257. A blanket assertion that the documents are work-product or reflect anticipated litigation is not sufficient to attach the immunity. *H.L. Hayden Co. v. Siemens Medical Systems,* 108 F.R.D. 686, 688 (S.D.N.Y. 1985) (establishing means of particularizing a sufficient basis to claim the immunity).

■ Once a party seeking the immunity has met its burden of proof establishing the necessary elements, the burden shifts to the moving party to make a requisite showing that there is substantial need and undue hardship to overcome the immunity. *In re Grand Jury Subpoenas, supra,* at 1257 ("[T]he party seeking discovery must establish need for the material and a practical inability to secure the substantial equivalent thereof by alternate means."); *see also Carter–Wallace v. Hartz Mountain,* 553 F.Supp. 45, 51 (S.D.N.Y.1982) (re-quiring a showing of substantial need and an inability to obtain substantial equivalent without undue hardship).

■ Under certain circumstances, even opinion work product may be disclosed during discovery. Public policy may require the disclosure of information that is clearly protected. As the Eighth Circuit has noted,

"[O]pinion work product enjoys a near absolute immunity and can be discovered only in very rare and extraordinary cases ... where weighty considerations of public policy and proper administration of justice would militate against nondiscovery ..."

*In re Murphy,* 560 F.2d 326, 336 (8th Cir. 1977).

The Second Circuit has stated that "[W]here so-called work product is in aid of a criminal scheme, fear of disclosure may serve a useful deterrent purpose and be the kind of rare occasion on which an attorney's mental processes are not immune." *In re John Doe Corp.,* 675 F.2d 482, 492 (2d Cir.1982). This rationale has been extended by courts to address the occurrence where the mental impression work of the attorney, or non-attorney, becomes itself a fact in the action. *See Handgards v. Johnson & Johnson,* 413 F.Supp. 926, 932 (N.D. Cal.1976) ("[a] lawyers privacy must give way when the advice of counsel is directly at issue and the need for production is compelling.")

1. *Intra-association correspondence*

■ Seaview seeks to withhold five letters between association members as work-product/anticipated litigation materials. These documents do not uniformly appear to have been prepared in anticipation of litigation. Rather, they are updates on association business which do not reveal privileged information.

An example of Seaview's failure to meet its burden is the letter of William Dickey.

Seaview's counsel claimed at oral argument that Mr. Dickey was an attorney for the association and was giving his legal opinion regarding anticipated litigation. Subsequently, Seaview's counsel asked this court to consider the Dickey letter protected by the attorney-client privilege as well as work-product and First Amendment since Mr. Dickey is an "Association member and lawyer." (Mills Letter at 9, n. 3). At his deposition, however, Mr. Dickey stated that he was an investment banker and that he "used to be a lawyer." Moreover, in the subject letter in response to the legal analysis concerning the boat basin, Mr. Dickey conditions his opinion regarding the law "as we had been counseled" and not on his own legal analysis.

As with the other intra-association letters, Mr. Dickey's letter is analogous to a business letter written in response to an association update of current business. Dickey's business was investment banking and his letter reflects the analysis of an investor wishing to maximize an investment opportunity, not a document prepared for counsel in anticipation of litigation. *See Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum,* 105 F.R.D. 16, 41 (S.D.N.Y. 1984).

Furthermore, even if this court found these documents to be work-product, they fall into that limited category of documents that ought to be disclosed to plaintiffs.

Plaintiffs' counsel stated at oral argument that the documents he seeks would reveal the sham nature of Seaview's petitioning activities as well as evince the grounds for plaintiffs' RICO claims. As such, counsel claimed that these documents were material, relevant, and grounded in the very heart of the claim. Since the documents are exclusively in the control of the association and its counsel, it is a certainty that this material cannot be secured by any alternate means.[6]

## 2. *Lobbyist correspondence*

Seaview seeks to withhold three documents of lobbyist Richard Curry under the work-product immunity.[7] Seaview's counsel alleges that this legislative/political consultant should be considered as a "legislative attorney." Furthermore, Seaview asserts that anticipated legislative action is equivalent to anticipated litigation. (Richard S. Mills Letter dated January 18, 1991, at 9). At oral argument, counsel proffered that any communication between a lobbyist and client, *per se*, should be protected under work-product or First Amendment privilege.

Curry's various letters and memoranda are primarily updates on administrative actions. Rarely does he even address the fact that litigation has occurred in state or federal court or that formal administrative hearings are anticipated on behalf of Seaview. In fact, most of Mr. Curry's activi-

**6.** Moreover, given the allegations presented in plaintiffs' complaint and representations made by plaintiffs' counsel, the integrity of the political process compels us to order the production of the challenged documents. Plaintiffs' allegations are not directed solely to private individuals exercising their private rights. Rather, a municipality and private actors, allegedly acting in consort to benefit purely private interests, are claimed to have violated plaintiffs' constitutional rights by means of *public fora under the* guise of working for the betterment of the commonweal. Discovery of these actions should be open to public scrutiny and not shielded by claims of purely private conduct. As the Supreme Court has stated,

> "'Government is not partly public or partly private depending upon the governmental pedigree of the type of a particular activity or manner in which the Government conducts it.'"

*Indian Towing Co. v. United States,* 350 U.S. 61, 67–68, 76 S.Ct. 122, 126, 100 L.Ed. 48 (1955) (quoting *Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 383–84, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947)). The defendants entered the public arena and joined with the municipality in adjudicating claims against the plaintiffs. The scope of the joint project is a fundamental issue in this action which implicates a compelling public interest to avoid even the appearance of improper influence in representative government. *Buckley v. Valeo,* 424 U.S. 1, 27, 96 S.Ct. 612, 638–39, 46 L.Ed.2d 659 (1976) (per curiam); *CSC v. Letter Carriers,* 413 U.S. 548, 565, 93 S.Ct. 2880, 2890, 37 L.Ed.2d 796 (1973).

**7.** Most of the lobbyist documents are withheld under the claimed First Amendment privilege but in some instances work-product immunity is also cited. This section will only address the work-product claim.

ties appear to be informal lobbying efforts rather than some species of work-product in anticipation of litigation.

■ Summaries of legislative meetings, progress reports, and general updates on lobbying activities do not constitute legal advice and, therefore, are not protected by the work-product immunity. *North Carolina Electric Membership Corp. v. Carolina Power & Electric Co.*, 110 F.R.D. 511, 517 (M.D.N.C.1986).

Seaview's use of a lobbyist appears to have been intended to avert litigation by applying political pressure to federal agencies which could affect plaintiffs' marina operation. As such, the correspondence from Seaview's lobbyist was not directed towards anticipated litigation but rather toward non-litigation means that could achieve the same results in lieu of litigation. Such efforts are not equivalent to litigation nor subject to the work-product immunity under Fed.R.Civ.P. 26(b)(3) or *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and its progeny.

Therefore, it is hereby ordered that the following documents be produced to plaintiff:

| Date | Document Type | Author | Recipient |
| --- | --- | --- | --- |
| 08–13–86 | Letter | Gardner | Gilman |
| 01–01–87 | Draft memo | Curry | n/a |
| 02–16–87 | Letter | Dickey | Goldhirsch |
| 02–08–88 | Letter | Hellman | Goldhirsch |
| 03–12–88 | Memo | Curry | Stamberg |
| 08–24–89 | Letter | Greenfield | Goldhirsch |
| 09–28–89 | Memo | Curry | n/a |
| 01–03–90 | Memo | LoGrande | Cheney |

## FIRST AMENDMENT PRIVILEGE

### 1. *Membership lists*

Plaintiffs have requested a list of the members of the Seaview Association. Two grounds are posited for the need of this list. First, plaintiffs state that in response to deposition questions and interrogatories defendants have claimed that no records exist that could reveal which members were present at various association meetings. In absence of such records, the plaintiffs state that they would have to survey all individual members to ascertain who attended association meetings. To do so, plaintiffs need a membership list.

Plaintiffs' second reason for needing a membership list is to find out whether and how many of the association members reside out-of-state. Without such a list, plaintiffs state that they cannot prove the interstate commerce element of their RICO claim.

The Supreme Court has recognized a First Amendment associational privilege against disclosing membership lists. As the Court stated in *NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958),

"It is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute [an] effective ... restraint on freedom of association."

357 U.S. at 462, 78 S.Ct. at 1171.

Although the Court stated that "it is immaterial whether the beliefs to be advanced by association pertain to political, economic, religious, or cultural matter," *id.*, the association privilege usually is upheld when the group's causes are unpopular and disclosure would result in harassment or violence constituting an obvious chilling of the members exercise of their rights. *See generally, id.* 357 U.S. at 462, 78 S.Ct. at 1171–72; *Black Panther Party v. Smith*, 661 F.2d 1243, 1265 (D.C.Cir. 1981), *vacated mem. sub nom., Moore v. Black Panther Party and Smith v. Black Panther Party*, 458 U.S. 1118, 102 S.Ct. 3505, 73 L.Ed.2d 1381 (1982); *Savola v. Webster*, 644 F.2d 743, 745–47 (8th Cir. 1981). The nature and activities of Seaview can hardly be categorized as analo-

gous to the NAACP, the Black Panther Party, or the Communist Party. Furthermore, the court is not satisfied that disclosure of the members of Seaview would have any chilling effect whatsoever given the history of litigation by Seaview.

We need not reach this constitutional issue, however, as it regards the membership lists. Plaintiffs' counsel concedes that the information regarding association membership has been available from public sources and that it is merely easier for him to request the information from Seaview directly than to ascertain the membership from public sources. Counsel has had more than a year to amass the information he seeks from public sources. The fact that discovery has come to a close is not a compelling reason to order that which plaintiff could have obtained without the court's assistance but chose not to attempt.

Furthermore, whether any of the association members reside out-of-state can easily be verified by interrogatory. In fact, Seaview's counsel verifies that plaintiff has already deposed one Seaview member who admits to an out-of-state residence, William Dickey. Seaview's counsel stated at oral argument that she could verify how many association members list an out-of-state mailing address on association records. Consequently, plaintiffs have consented to withdraw their request for a membership list with the understanding that they will submit and Seaview will respond to an additional interrogatory requesting the number of association members listing a non-New York State mailing address.

### 2. *Right to petition*

■ Seaview has sought to withhold 25 documents under a First Amendment right to petition theory. Defendant's counsel states in a letter dated January 24, 1991, that an "absolute" privilege exists protecting documents from discovery under the

First Amendment with respect to petitioning the government. No precedential support was offered in counsel's letter or at oral argument.

As early as 1845, the Supreme Court held in a libel action that an absolute privilege did not exist with respect to petitioning the government. *White v. Nicholls*, 44 U.S. (3 How.) 266, 11 L.Ed. 591 (1845). The *Noerr–Pennington* doctrine itself, which Seaview claims immunizes it from the underlying cause of action, does not posit an absolute privilege to anti-trust law. *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., supra,* 365 U.S. at 144, 81 S.Ct. at 553. Nor, has the Court found an absolute right to petition in the contexts of baseless litigation, *Bill Johnson's Restaurants, Inc. v. N.L.R.B.,* 461 U.S. 731, 743, 103 S.Ct. 2161, 2170, 76 L.Ed.2d 277 (1983). The right to petition may establish "at most a qualified privilege," but not an absolute one. *Briscoe v. LaHue*, 460 U.S. 325, 332 n. 12, 103 S.Ct. 1108, 1114 n. 12, 75 L.Ed.2d 96 (1983).

In an affirmation of the holding in *White v. Nicholls*, the Court stated in response to a party's claim of an absolute privilege that,

> "[N]othing presented to us suggests that the Court's decision not to recognize an absolute privilege in 1845 should be altered; we are not prepared to conclude, 140 years later, that the Framers of the First Amendment understood the right to petition to include an unqualified right to express falsehoods in exercise of that right."

*McDonald v. Smith*, 472 U.S. 479, 484, 105 S.Ct. 2787, 2790, 86 L.Ed.2d 384 (1985) (footnote omitted).

Likewise, in the present action, nothing that Seaview has stated leads this court to the conclusion that the Petition Clause of the First Amendment is afforded any "absolute" privilege.[8]

---

8. "To accept petitioner's claim of absolute immunity would elevate the Petition Clause to special First Amendment status. The Petition Clause, however, was inspired by the same ideals of liberty and democracy that gave us the freedoms to speak, publish and assemble ... These First Amendment rights are insepa-

rable ... and there is no sound basis for granting greater constitutional protection to statements made in a petition to the President than other First Amendment expressions."
*McDonald v. Smith, supra,* 472 U.S. at 485, 105 S.Ct. at 2791 (citations omitted).

Having claimed an absolute privilege, Seaview's counsel proceeds to direct the court to a balancing test for documents that may infringe on a First Amendment right. It is inconsistent to claim an "absolute" privilege and a balancing test for said privilege. Inherent in the nature of an absolute is that no exception could arise such that, on balance, the absolute would be set aside; i.e., once an absolute privilege is established, the inquiry ceases.

Alternatively, counsel states that the discovery issues should be stayed pending the outcome of its proposed motion for summary judgment on its claim of immunity under the *Noerr–Pennington* doctrine. Although the *Noerr–Pennington* doctrine may ultimately guide the court to find Seaview immune from liability under 42 U.S.C. § 1983 for the claimed violations, the doctrine does not apply to discovery. *Assoc. Container Transp. (Australia) Ltd. v. United States, supra,* 705 F.2d at 58–60; *North Carolina Electric Membership Corp. v. Carolina Power & Light Co., supra,* 666 F.2d at 53. Consequently, this court will not abdicate its responsibility to address the parties' discovery disputes.[9]

The Supreme Court in *United Mine Workers v. Pennington, supra,* stated that courts may admit evidence of protected activities which may be probative of other issues on which liability could be based,

> "[I]t would of course still be within the province of the trial judge to admit this evidence, if he deemed it probative and not unduly prejudicial, under the 'established judicial rule of evidence that testimony of prior or subsequent transactions, which for some reason are barred from forming the basis for a suit, may nevertheless be introduced to show the purpose and character of the particular transactions under scrutiny.'"

*Id.* 381 U.S. at 670 n. 3, 85 S.Ct. at 1593–94 n. 3 (citations omitted). If such evidence is deemed admissible, then it surely must be deemed discoverable.

Recognizing that a First Amendment interest is present and that plaintiffs must assert a compelling interest of their own, *see Buckley v. Valeo, supra,* 424 at 64–65, 96 S.Ct. at 656, the court must ask three basic questions concerning the plaintiffs' request:

1) are the documents relevant, *In re Petroleum Products Antitrust Litigation,* 680 F.2d 5, 7 (2d Cir.1982) (per curiam);

2) are the documents sought critical to the complainants' claims, *Baker v. F. & F. Investment,* 470 F.2d 778, 783–85 (2d Cir. 1972), *cert. denied,* 411 U.S. 966, 93 S.Ct. 2147, 36 L.Ed.2d 686 (1973) ("highly material and relevant, necessary or critical to the maintenance of the claim"). *Accord Black Panther Party v. Smith, supra,* 661 F.2d at 1268 ("is crucial to the party's case); *Int'l Union, United Automobile, Aerospace and Agricultural Implement Workers of America v. Nat'l Right to Work Legal Defense and Education Foundation, Inc.,* 590 F.2d 1139, 1152–53 (D.C.Cir. 1978) (goes to the "heart of the claims"); and,

3) are the documents obtainable from any other source, *United States v. Burke,* 700 F.2d 70, 76–77 (2d Cir.), *cert. denied,* 464 U.S. 816, 104 S.Ct. 72, 78 L.Ed.2d 85 (1983), *on remand,* 715 F.Supp. 445 (E.D.N.Y.), *aff'd,* 891 F.2d 277 (2d Cir.1989).

One of the basic claims made by the plaintiffs is that the association and the Town of Islip conspired to deny plaintiffs' economic rights. Plaintiffs claim that the public discourse presented by the defendants concerning ecological or environmental violations masked the private intent to wrest ownership/control of plaintiffs' marina business. In this regard, the plaintiffs allege the defendants conspired to effect "sham" legislative, executive, administrative, and judicial proceedings. It is rele-

---

9. Judge Weinstein stated at a hearing in this action on May 22, 1990, that he was denying the defendants' motions to dismiss in order for the parties to proceed with discovery as he would "rather see all acts developed." (May 22, 1990 Transcript at 29). Staying a decision regarding documents that would more fully develop the underlying acts and possibly establish an exception to the *Noerr–Pennington* immunity would be contrary to Judge Weinstein's reason for granting discovery.

vant, and moreover, critical to these claims for plaintiffs to inquire into the intentions of the association regarding the marina. Furthermore, the source of the information could not possibly be obtained from anyone outside of the association. Accordingly, we find that the balance tips in favor of the plaintiffs.

Seaview claims that discovery of these documents would have a chilling effect on the association's right to petition. At oral argument counsel stated that a lobbyist's work product is inherently protected by the First Amendment. In written submissions Seaview states that releasing these documents would "create a chilling effect in that all of the thoughts and activities of citizens who are upset about illegalities in their community would be subject to scrutiny by their adversaries and the public." (Letter of Richard S. Mills dated January 18, 1991, at 5).

The nature of plaintiffs' action arises from a situation where a citizen, i.e. a marina owner, is in fact upset about alleged illegalities in his community. Moreover, Seaview and its co-defendants are not newcomers to the legislative, administrative, or adjudicatory formation of public policy. The defendants have been exercising their right to petition regarding the underlying acts in this case by way of state and federal administrative agencies and courts for at least the past five years. It is quite doubtful, as well as disingenuous, to claim that Seaview's exercise of its rights will in any way be chilled by plaintiffs' exercise of their right to petition this court and be afforded the right to discovery under the Federal Rules of Civil Procedure.

Seaview asserts that any document that indicates who an individual has supported in an election campaign is absolutely privileged including political donations. In up-

holding the constitutionality of reporting and disclosure requirements for funding of political elections in *Buckley v. Valeo, supra,* 424 U.S. at 60–84, 96 S.Ct. at 654–66, the Supreme Court unanimously held that governmental interests exist which outweigh the possibility of infringement to an individual's First Amendment rights deemed absolutely privileged by Seaview. One of the interests that the Court found to vindicate disclosure was the deterrence of "actual corruption and [to] avoid the appearance of corruption." *Id.* 424 U.S. at 67, 96 S.Ct. at 657–58.

In the context of plaintiffs' suit, the exposure of an appearance of corruption is central to the underlying cause of action and possibly the only exception to the defendants' claimed immunity. Although not identical to the governmental interest, plaintiffs' interest is equally as compelling and on balance, tips in favor of disclosure.

Finally, we find that we are of the same opinion as the court in *North Carolina Electric Membership Corp. v. Carolina Power & Light Co., supra,*

"In *Herbert v. Lando,* 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979), the Supreme Court ordered production of a memorandum from a producer's 'behind the scenes' planning conference for a television news special. The Court held that such discovery would not have a chilling effect upon the news organization's first amendment rights. If discovery into the internal affairs of a news organization does not have a chilling effect, then neither would discovery in this case."

666 F.2d at 53.

Therefore, it is ordered that copies of the following documents are to be served on the plaintiff:

| Date | Document Type | Author | Recipient |
|------|--------------|--------|-----------|
| 02–16–87 | Letter | Dickey | Goldhirsch |
| 05–29–87 | Letter | Isler | Hellman |
| 06–01–87 | Letter | Gilman | Germano |
| 06–01–87 | Letter | Hellman | Isler |
| 08–18–87 | Letter | Isler | Gilman |
| 08–31–87 | Letter | Kamin | Lotto |
| 12–02–87 | Memo | Curry | Stamberg |
| 03–15–88 | Letter | Goldhirsch | n/a |
| 04–04–88 | Memo | Curry | Stamberg |
| 04–23–88 | Memo | Curry | Stamberg |
| 05–06–88 | Memo | Gardner | n/a |
| 09–21–88 | Letter | Goldhirsch | Gilman |
| 04–07–89 | Letter | Curry | Stamberg |
| 04–07–89 | Letter | Curry | Stamberg |
| 04–25–89 | Letter | Curry | Stamberg |
| 07–03–89 | Letter | Curry | Stamberg |
| 08–03–89 | Memo | Curry | Stamberg |
| 09–06–89 | Memo | Curry | Stamberg |
| 09–25–89 | Letter | Gardner | Jones |
| 10–10–89 | Memo | Curry | Stamberg |
| 10–10–89 | Memo | Curry | Stamberg |
| 10–23–89 | Letter | Curry | Goldhirsch |
| 11–01–89 | Memo | Curry | Stamberg |
| 11–04–89 | Memo | Curry | Stamberg |
| undated | Pamphlet | Frank Jones Fund | |
| undated | Memo | Seaview Association | |

---

## CONCLUSION

Seaview is deemed to have met and sustained its burden for all documents that have not been ordered produce. Those documents that have been ordered produced shall be forwarded to the plaintiffs' counsel within ten (10) days from the filing of this order. All documents submitted to the court for *in camera* review shall be returned to Seaview's counsel upon issuance of this order.

SO ORDERED.