**CARTERET SAVINGS BANK, P.A.,**
**Plaintiff–Appellee,**

v.

**COMPTON, LUTHER & SONS, INC.;**
**Delano Compton; Margaret**
**Compton, Defendants–Appellants.**

**No. 88–2160.**

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 4, 1989.

Decided April 4, 1990.

---

Thomas Czarnik, Princeton, W.Va., for defendants-appellants.

Mark Louis Esposito, Penn, Stuart, Eskridge & Jones, Bristol, Va., for plaintiff-appellee.

Before ERVIN, Chief Judge, and RUSSELL and WIDENER, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

This is a suit by a savings bank to collect on a note purchased from the Federal Savings and Loan Insurance Corporation ("FSLIC"). This note was included in the assets of the original payee which were taken over by the FSLIC. The defense to the action, as well as the basis of the defendants' counterclaims, is an alleged collateral agreement to that note varying its terms. Based upon *D'Oench, Duhme & Co., Inc. v. Federal Deposit Ins. Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and its progeny, the trial court granted summary judgment for plaintiff on both the complaint and the counterclaims. In *D'Oench*, the Supreme Court established a policy that collateral, noncontemporaneous agreements to a note that are acquired and sold by the FSLIC cannot serve as a defense to an action on the note or as a counterclaim connected to the note. It was said that to hold otherwise would undermine the FSLIC's mission. On a motion to reconsider, the appellants later produced some evidence that they contend would avoid the *D'Oench* doctrine. However, the district judge denied the motion, stating that appellants failed to bring the evidence forth in a timely manner, and that the evidence would not have prevented the entry of summary judgment. That entry of summary judgment is the subject of this appeal. For the reasons stated below, we affirm.

## I.

Appellee Carteret Savings Bank ("Carteret") is located in New Jersey. It purchased the assets of a failed savings bank, Mountain Security Savings Bank ("Mountain Security"), from the FSLIC. Included in those assets was a note executed by Margaret and Delano Compton, and Luther Compton and Sons, Inc. ("the Comptons"). The note required payments of principal and interest to begin on July 1, 1985. These payments never began. In addition, this note was originally secured by certain land in West Virginia, and later Virginia land was substituted as security. There were two antecedent liens on the Virginia

property—liens that would have to be satisfied before this lien could be enforced. The holder of the first lien on the Virginia property also was not receiving payments, so it foreclosed on the property. Being the third lienholder, Carteret was effectively unsecured.

Since it appeared that Carteret would receive none of the proceeds from the foreclosure sale, Carteret sued on the note. The Comptons raised several affirmative defenses and counterclaims. Both the defenses and the counterclaims are based entirely on an alleged collateral agreement between the Comptons and Mountain Security regarding the terms of the note.[1] This alleged agreement was executed more than seven months *after* the note was executed. Under its terms, Mountain Security agreed to release its liens on any of the Virginia land *sold* by the Comptons. In return, the Comptons were required to apply the proceeds to the antecedent liens on that property, and then to apply the remaining proceeds to the note between the Comptons and Mountain Security. Since all of the defenses and counterclaims relied on this alleged collateral agreement to the note, Carteret moved for summary judgment based upon the *D'Oench* doctrine.

The district judge sustained the motion under the *D'Oench* decision. He held that all of the counterclaims and defenses were barred by this doctrine, since the Comptons had produced no evidence or affidavits which would support the inapplicability of *D'Oench. Anderson v. Liberty Lobby,* 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514–15, 91 L.Ed.2d 202 (1986).

The Comptons thereafter made a motion for reconsideration. As part of that motion the Comptons tendered a document that was not presented before. The document is said to indicate that this collateral agreement was *contemporaneous* with the execution of the note. If the agreement were contemporaneous, the *D'Oench* doctrine arguably might not apply. However, the district judge did not rule on that issue. Instead, the judge ruled that the Comptons

had been given an ample opportunity to produce evidence to combat the affidavits of Carteret in the first summary judgment motion, and had failed to produce any. Admittedly, this document had been produced by the Comptons as part of the motion to reconsider and had been in the case file during the pendency of the first summary judgment motion. In reply, the defendants contended that the document in question was part of a "legion of documents" in that case file and that it was the Comptons' responsibility to bring that document forward earlier.

The district judge well documented the Comptons' tardiness in bringing forth this alleged evidence of a contemporaneous, collateral agreement. Such evidence was not mentioned in the Comptons' brief in opposition to summary judgment or in the oral argument of that motion. At the oral hearings of Carteret's initial summary judgment motion, the district judge instructed the Comptons to file affidavits to support their claims if they could. As of the time when the district judge's first memorandum opinion (which granted summary judgment) was filed, no affidavits had been produced. In fact, no mention was made of this alleged agreement until the Comptons filed a supplement to their brief in support of their motion to reconsider.

Because of this tardiness, the judge ruled that under *Anderson, supra,* and *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986), the prior summary judgment ruling would stand. At that late date, the Comptons would not be allowed to produce evidence or affidavits in support of their defense since they were given ample opportunity to bring this evidence forward earlier.

Although the district judge relied on the failure of the Comptons to follow summary judgment procedure, he stated an alternate basis for his ruling. He examined the plain language of the alleged collateral agreement, and determined that it only reflected a collateral agreement to release specific

---

1. In their oral argument of the summary judgment motion, the Comptons' counsel admitted that the case "rises and falls" on the alleged breach of the collateral agreement.

liens when certain parcels of land were *sold.* The brunt of the Comptons' counterclaims and affirmative defenses is that they produced certain willing buyers and the bank refused to release its liens *in advance of sale.* Hence, on the basis of the evidence produced by the Comptons, even including that evidence produced for the first time in the motion to reconsider, the Comptons could not withstand the summary judgment motion. They had not pled any breach of the agreements which they alleged.

There are two subsidiary factual incidents. First, the district judge entered two protective orders on December 8, 1987. The Comptons raised in passing at the hearing of the motion to reconsider that their ability to produce evidence sufficient to prevent summary judgment had been impeded by one of the protective orders.[2] The judge ruled that the fact that the Comptons never filed affidavits to support their position was controlling. If the protective order prevented the Comptons from *producing evidence,* that fact should have been stated in affidavits. Yet, as the district judge indicated, the record does not support such an implication.

Second, the Comptons imply that Carteret was put on notice by them that there was a collateral agreement to the note. At one point, the Comptons wrote to Carteret to inquire about the possibility of Carteret releasing certain liens in order to facilitate the liquidation of certain property. A Carteret official wrote back stating that if the Comptons had any specific proposal in mind, it should be presented. Neither in the appellants' letter to Carteret nor in Carteret's reply letter was there any reference to any previous agreement by Mountain Security to release its lien to permit a sale of any part of the encumbered property. In fact, the letter of the appellants actually implies there was no such agreement.

## II.

■ As noted above, *D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), is the controlling case on the merits of this appeal. In *D'Oench,* it was held that the maker of several notes could not claim that the notes were a mere accommodation in an action on the notes by the Federal Deposit Insurance Corporation ("FDIC"). On the back of the receipts that the bank gave for these notes, it was indicated that the notes would not be called for payment. The bank later failed and was acquired by the FDIC. The Court found that the federal policy in support of the FDIC's mission would be undercut by recognizing these secret agreements.

The *D'Oench* rule was later codified by Congress:

No agreement which tends to diminish or defeat the right, title or interest of the Corporation [the FDIC] in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, *contemporaneously* with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

12 U.S.C. § 1823(e) (1980 & Supp.1989) (emphasis added). Although the U.S.Code section only codified the *D'Oench* rule with regards to the FDIC, other circuit courts continue to apply it to situations involving the FSLIC. *FSLIC v. Two Rivers Associates, Inc.,* 880 F.2d 1267 (11th Cir.1989); *Mainland Savings Association v. Riverfront Associates, Ltd.,* 872 F.2d 955 (10th Cir.1989); *First-south, F.A. v. Aqua Construction, Inc.,* 858 F.2d 441 (8th Cir.1988); *FSLIC v. Lafayette Investment Proper-*

---

**2.** However, they never stated which protective order was the culprit, or in what way their efforts were hampered. Also, these protective orders were not appended to the motion to reconsider, and were not made part of the appendix on appeal.

344

*ties, Inc.,* 855 F.2d 196 (5th Cir.1988); *Taylor Trust v. Security Trust Federal Savings & Loan Association,* 844 F.2d 337 (6th Cir.1988). As these courts have noted, there is no material difference between the FDIC and the FSLIC as far as the public policy behind *D'Oench* and its progeny is concerned. Further, it is also not a defense to an action by the FDIC that the FDIC knew of the collateral agreement. *Langley v. FDIC,* 484 U.S. 86, 95, 108 S.Ct. 396, 403, 98 L.Ed.2d 340 (1987). This should also apply to cases involving the FSLIC.

Hence, the judge's first ruling on the summary judgment motion was correct. At that time, the Comptons had only come forth with evidence of a noncontemporaneous agreement that altered the terms of the note. Title 12 U.S.C.A. § 1823 clearly requires that the collateral agreement must be contemporaneous if it is to be enforceable.

■ The trial judge was also safely within his discretion in not overturning his grant of summary judgment on the motion to reconsider. The Comptons had produced evidence of a claimed contemporaneous agreement *for the first time* at the hearing of the motion to reconsider. The Comptons had been under a duty to bring forward any evidence they had to this effect during the motion for summary judgment—they could not rest on their pleadings when a *prima facie* case for summary judgment had been established. *Celotex, supra,* 477 U.S. at 322–32, 106 S.Ct. at 2552–57; *Anderson, supra,* 477 U.S. at 256–57, 106 S.Ct. at 2514–15. Furthermore, as the district judge pointed out, the new evidence produced by the Comptons would not have saved them anyway. They had not produced any evidence of a breach of the alleged contemporaneous agreement, for they had not *sold* any of the property in question. Hence, the entry of summary judgment and the denial of the motion to reconsider are

AFFIRMED.