985 F.2d 553
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver for The
National Bank of Washington, Plaintiff-Appellee,
v.
VIENNA MORTGAGE CORPORATION, Defendant-Appellant,
MORTGAGE BANKERS ASSOCIATION OF AMERICA, Amicus Curiae.
Federal Deposit Insurance Corporation, as receiver
for The National Bank of Washington,
Plaintiff-Appellee,
v.
VIENNA MORTGAGE CORPORATION, Defendant-Appellant,
 Nos. 92-1091, 92-1092.
 United States Court of Appeals,
Fourth Circuit.
 Argued: October 28, 1992
Decided: February 5, 1993
 
 MORTGAGE BANKERS ASSOCIATION OF AMERICA, Amicus Curiae. Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Senior District Judge. (CA-91-1042-A)
 Robert Charles Seldon, KROOTH & ALTMAN, Washington, D.C., for Appellant.
 Dennis Sanford Klein, HUGHES, HUBBARD & REED, Washington, D.C., for Appellee.
 Joseph A. Kijewski, KROOTH & ALTMAN, Washington, D.C., for Appellant.
 Steven T. Corliss, M. Kathleen O'Connor, HUGHES, HUBBARD & REED, Washington, D .C.; Ann S. DuRoss, Assistant General Counsel, Colleen B. Bombardier, Senior Counsel, Robert D. McGillicuddy, Deputy Senior Counsel, Michelle Kosse, FEDERAL DEPOSIT INSURANCE CORPORATION, Washington, D.C., for Appellee.
 Kenneth Labowitz, YOUNG, GOLDMAN & VAN BEEK, Alexandria, Virginia, for Amicus Curiae.
 Before SPROUSE and CHAPMAN, Senior Circuit Judges, and YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 Vienna Mortgage Corporation (VMC) appeals the grant of summary judgment in favor of the Federal Deposit Insurance Corporation (FDIC), and the dismissal of VMC's counterclaim under Rule 12(b)(1) Fed. R. Civ. P. FDIC brought this action to recover monies due under a mortgage service contract, which was made between the Washington Mortgage Group, for whom VMC is now the successor in interest, and the, now insolvent, National Bank of Washington (NBW), for whom FDIC is acting as receiver. VMC claims that it is entitled to the monies it retained under a termination penalty agreement, executed as an amendment to the contract. VMC also counterclaimed for Breach of Contract and Unjust Enrichment. The district court dismissed VMC's counterclaim, pursuant to Rule 12(b)(1) Fed. R. Civ. P., finding that VMC had not exhausted its administrative appeals. The district court granted FDIC's motion for summary judgement on its claim, finding that the penalty amendment was not enforceable against FDIC under 12 U.S.C. § 1823(e), and therefore VMC could not retain the termination fee. We affirm.
 
 I.
 
 2
 NBW and VMC (previously known as the Washington Mortgage Group) were both subsidiaries of Washington BanCorporation ("WBC"), a Delaware bank holding corporation. On April 7, 1988 they executed a Whole Loan Sale and Servicing Agreement ("Agreement"), under which VMC agreed to make real estate mortgage loans, sell them to NBW and continue to service the loans in return for a certain percentage of the receipts as a fee. The Agreement was signed by the vice-presidents of both VMC and NBW.
 
 
 3
 Under the Agreement NBW had the right to terminate without cause upon 30 days notice. The Agreement provided:
 
 
 4
 Upon termination of this Agreement, [VMC] will account for and turn over to [NBW] all funds collected under each Mortgage, less only the compensation then due [VMC], and deliver to [NBW] all records and documents relating to each such Mortgage as described herein that it may have in its possession.
 
 
 5
 This Agreement had a standard merger clause which stated, in part, "[t]his document contains the entire agreement between the parties hereto and cannot be modified in any respect except by an amendment in writing signed by both parties."
 
 
 6
 From April 1988 until November 1990 VMC executed its duties under this contract with NBW, servicing the mortgages, and collecting and remitting the funds to NBW.
 
 
 7
 In Spring 1990, the parent company, WBC, decided to sell its wholly-owned subsidiary, VMC, to Washington Mortgage Acquisition, Inc. ("WMA"). The transaction was effected through the execution of four separate documents, and was overseen by officers of WBC, NBW, VMC, and WMA, and also by officials from FDIC, the Federal Reserve Board, and the Office of the Comptroller of the Currency.
 
 
 8
 One of the documents, executed on June 29, 1990, was entitled Amendment To Whole Loan Sale And Servicing Agreement ("Amendment"). It purported to amend the original contract between NBW and VMC, and called for the payment of a termination fee by "Purchaser" if it terminated the service arrangement with the "Seller" without cause.
 
 
 9
 "Seller" was identified as WMG (now VMC) in both the Agreement and the Amendment. In the original Agreement"Purchaser" was identified as NBW. But in the Amendment WBC (the parent of NBW) "and its subsidiaries" were defined "collectively" as "Purchaser." The Amendment was only signed by officers of VMC and WBC, the parent company.
 
 
 10
 The sale of VMC to WMA was also memorialized by a Stock Purchase and Investment Agreement; a Loan Servicing Transfer Agreement; and a Loan Sale Agreement. The final documents were executed on June 29, 1990.
 
 
 11
 NBW derived certain benefits from the sale of VMC: first, it was relieved of certain financial obligations, and second, VMC was obliged to pay NBW $3.5 million and to assume certain nonconforming loans.
 
 
 12
 In August 1990 FDIC declared NBW insolvent, and took control as its receiver. In a letter of October 25, 1990, FDIC gave notice to VMC of its termination, on behalf of NBW, of the 1988 mortgage service contract. The letter stated the termination would be effective 30 days from its receipt. No cause was specified in the letter.
 
 
 13
 VMC returned to FDIC some of the funds collected on behalf of NBW, but retained $770,105.45, an amount it calculated to be the termination fee under the formula set forth in the Amendment of June 29, 1990.
 
 
 14
 FDIC, claiming that it is not bound by the Amendment, filed actions for conversion, breach of contract and breach of fiduciary duty against VMC in the U.S. District Court for the Eastern District of Virginia, Alexandria Division. VMC counterclaimed for breach of contract and unjust enrichment.
 
 II.
 
 15
 This appeal presents three issues: first, whether VMC raised a genuine issue of material fact as to the Amendment's enforceability against FDIC under 12 U.S.C. § 1823(e)(West 1989);[1] second, whether the district court lacked subject matter jurisdiction over VMC's counterclaim because VMC had failed to exhaust its administrative remedies pursuant to the requirement ofs 1821(d)(13)(D); and third, whether the district court abused its discretion in awarding prejudgment interest.
 
 A.
 
 16
 When the creditor of a depository institution in insolvency seeks to recover under an agreement alleged to have been executed with the insolvent institution, such agreement must comply with the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA), 12 U.S.C. § 1823(e). Carteret Sav. Bank, P.A. v. Compton, Luther & Sons, 899 F.2d 340 (4th Cir. 1990). Among other things, FIRREA provides a scheme through which FDIC, as receiver, is protected against secret agreements between the insolvent institution and certain claimants. Section 1823(e) states:
 
 
 17
 (e) Agreements against the interests of Corporation
 
 
 18
 No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement-
 
 
 19
 (1) is in writing,
 
 
 20
 (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
 
 
 21
 (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
 
 
 22
 (4) has been, continuously, from the time of its execution, an official record of the depository institution.
 
 
 23
 12 U.S.C. § 1823(e) (West 1989).
 
 
 24
 In Carteret this Court noted that the preceding code section was a codification of language which had long controlled claims and defenses against FDIC as receiver. 899 F.2d at 343.
 
 
 25
 In this case VMC claims there is factual dispute as to whether the Amendment satisfies § 1823(e) and is thereby binding. It argues the issue is therefore inappropriate for summary judgment.
 
 
 26
 In a terse order, issued December 20, 1991, the district court held that the Amendment failed to satisfy the elements ofs 1823(e) and that the Amendment could not be enforced against FDIC.
 
 
 27
 In its consideration of § 1823(a) the Supreme Court has held, "[t]he short of the matter is that Congress opted for the certainty of the requirements set forth in § 1823(e). An agreement that meets them prevails.... [A]n agreement that does not meet them fails...." Langley v. FDIC, 484 U.S. 86, 95 (1987). Other circuits have explicitly held that each of the four criteria in § 1823(e) must be satisfied for an agreement to be valid against FDIC. In Resolution Trust Corporation v. McCrory the Fifth Circuit held thats 1823(e) "forbids defenses based on an agreement with a failed depository institution unless the agreement meets all four criteria enumerated in [that provision]." 951 F.2d 68 (5th Cir. 1992). Similarly, the Seventh Circuit has held that a claimant must meet each of the requirements. "Failure to satisfy one of the requirements of § 1823(e) is fatal to any agreement covered by that section." FDIC v. Wright, 942 F.2d 1089 (7th Cir. 1991).
 
 
 28
 This is not a case in which a contract may be inferred from extrinsic evidence. The language of § 1823(e) clearly says "no agreement ... shall be valid" against the receiver unless it satisfies each of the enumerated elements. We agree with the views of the Fifth and Seventh circuits. We affirm the district court and hold that the Amendment was an agreement which diminished the value, to FDIC, of the larger contract, which contract was an "asset" within the meaning of § 1823(e). The Amendment was not executed by NBW, it was not approved by the NBW Board of Directors, and no approval appeared in the minutes of the Board, and it thereby failed to pass muster under § 1823(e)(3).
 
 
 29
 The district court correctly determined that the failure of VMC to present evidence to establish these essential elements was fatal to its defense against FDIC's claim for recovery, and summary judgment on its claim was appropriate.
 
 B.
 
 30
 When a depository institution insured by FDIC becomes insolvent and is liquidated, FDIC may become the receiver for that financial institution pursuant to § 1821(c).[2] Under § 1821(d)(3) FDIC is authorized to decide claims filed by creditors of the insolvent institution.[3]
 
 
 31
 At the hearing on the motion to dismiss the VMC counterclaim the district court stated its reasoning and ruled from the bench that § 1821(d)(13)(D)[4] required that the claims procedure set forth under § 1821(d)(3) et seq. be exhausted prior to judicial review and that such procedure had not been exhausted. The court found that it lacked subject matter jurisdiction over the counterclaim until the administrative route had been completed.
 
 
 32
 "It is a long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." Darby v. Kemp, 957 F.2d 145, 147 (4th Cir. 1992). Adherence to this doctrine properly employs the specific expertise of the controlling agency, promotes efficiency and provides the courts with a"fully developed administrative record." Id.
 
 
 33
 VMC concedes that it has not exhausted its administrative remedies, but argues that it should be excused under the futility exception to the exhaustion doctrine. This exception is acknowledged in Darby. 957 F.2d at 147. VMC contends that, as FDIC has challenged the right of VMC to collect on its Counterclaim, and has filed this lawsuit, FDIC has made clear that it would not rule favorably on VMC's claim in an administrative proceeding. Therefore, VMC claims it would be futile to pursue its claim administratively.
 
 
 34
 In addressing this issue the district court looked to Rosa v. Resolution Trust Corp., 938 F.2d 383 (3rd Cir. 1991), a case resolved under FIRREA, which discusses the argument that a claimant should be excused from the exhaustion requirement because of futility. Rosa, 938 F.2d at 395. The claimants in Rosa asserted that since the Resolution Trust Corporation ("RTC"), the receiver in that case, had already opposed their claim it would be futile to seek administrative remedies. Id. The court rejected this argument saying the RTC's legal position in the district court litigation was "not necessarily conclusive of the receiver's determination of [claimants'] claims." Id. The court stated, "[i]f RTC as receiver were to allow and satisfy [claimants'] claims in whole or in part, the dispute now before this court would be moot to that extent." Id.
 
 
 35
 The district court concluded that, like the creditors in Rosa, VMC had failed to show actual futility. We agree and we affirm the decision of the district court to dismiss VMC's Counterclaim for lack of subject matter jurisdiction.
 
 C.
 
 36
 Finally, VMC argues that the district court abused its discretion in awarding prejudgment interest to FDIC.
 
 
 37
 The decision to award prejudgment interest is in the discretion of the trial court. Va. Code Ann. § 8.1-382 (Michie 1984 & Supp. 1991). Such an award may not be disturbed on appeal except upon a finding of abuse of discretion. Cotter v. Eastern Conf. of Teamsters Retirement Plan, 898 F.2d 424, 429 (4th Cir. 1990). Furthermore "prejudgment interest is particularly appropriate where, as here, there is no dispute as to the amount of damages to which the plaintiff is entitled." Id. The amount withheld was $770,105.45, VMC has had use of these funds throughout the dispute, and the sum in question was a liquidated amount due to NBW on November 29, 1990.
 
 
 38
 We hold that the district court did not abuse its discretion in awarding to FDIC prejudgment interest.
 
 AFFIRMED
 
 
 [1]
 Hereinafter, unless otherwise noted, all statutory citations refer to sections within Title 12 U.S.C. (West 1989)
 
 
 [2]
 Appointment of Corporation as conservator or receiver
 (1) In general Notwithstanding any other provision of Federal law, the law of any State, or the constitution of any State, the Corporation may accept appointment and act as conservator or receiver for any insured depository institution upon appointment in the manner provided in paragraph (2) or (3).
 (2) Federal depository institutions
 (A) Appointment
 ....
 (ii) Receiver
 The Corporation shall be appointed receiver, and shall accept such appointment, whenever a receiver is appointed for the purpose of liquidation or winding up the affairs of an insured Federal depository institution or District bank by the appropriate Federal banking agency, notwithstanding any other provision of Federal law (other than section 1441a of this title) or the code of law for the District of Columbia.
 12 U.S.C.A. § 1821(1)-(2)(A) (West 1989).
 
 
 [3]
 (3) Authority of receiver to determine claims
 (A) In general
 The Corporation may, as receiver, determine claims in accordance with the requirements of this subsection and regulations prescribed under paragraph (4)(A).
 
 
 [4]
 (D) Limitation on judicial review
 Except as otherwise provided in this subsection, no court shall have jurisdiction over -
 (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
 (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.
 12 U.S.C.A. § 1821(d)(13)(D) (West 1989).