UNITED STATES of America, Plaintiff
and Counter–Defendant,

Environmental Defense, North Carolina
Sierra Club, North Carolina Public In-
terest Research Group, Intervenor–
Plaintiffs,

v.

DUKE ENERGY CORPORATION,
Defendant and Counter–
Claimant.

No. 1:00 CV 1262.

United States District Court,
M.D. North Carolina.

Oct. 22, 2003.

## *ORDER*

ELIASON, United States Magistrate Judge.

This matter is before the Court on a number of motions. They all relate to this Court's April 11, 2003 Order. *United States v. Duke Energy*, 214 F.R.D. 383 (M.D.N.C. 2003). There, the Court granted the plaintiff United States of America's motion to compel discovery of documents relating to communications which defendant Duke Energy Corporation ("Duke Energy") received from the Utility Air Regulatory Group ("UARG"). The UARG is an association composed of electrical companies, including Duke Energy, and four trade associations. *Id.* at 389. It claims to be a legal advocacy group.[1]

Duke Energy resisted disclosure based on attorney-client and work product privilege.

Thus, the success of plaintiff's motion to compel depended on whether Duke Energy could prevail on a motion for a protective order establishing that the documents were privileged or protected. Because the documents had been shared with other members of the UARG, the Court considered whether Duke Energy could rely on the joint defense/common interest rule. This rule permits the sharing of attorney-client or work product protected material with other entities without there being a waiver of the privilege or protection. Duke Energy contends business groups with general common interests may combine to share information concerning potential legal problems and that all the information and documents exchanged with and from the association's attorney would be protected by attorney-client privilege or work product protection. The Court found that proposition to be a drastic expansion of the law of privilege and work product protection. *Id.* at 390. In the end, Duke Energy failed to sustain its burden of showing that the documents were entitled to attorney-client privilege or work product protection.

Pending before the Court are Duke Energy's motions for reconsideration, for clarification, and to stay the Court's Order. The UARG also filed a series of motions. It seeks to intervene for the limited purpose of objecting to or appealing the April 11, 2003 Order. Anticipating being allowed to intervene, the UARG has filed a motion for a protective order and to stay compliance, a motion for reconsideration, and a motion for a protective order, *in camera* inspection, and an evidentiary hearing.

### *Motion to Intervene*

■ The UARG seeks to intervene in this action pursuant to Fed.R.Civ.P. 24 for the

---

**1.** The UARG claims that it is neither a trade association nor lobbying group, but rather a legal advocacy group which initiates litigation in its own name and on behalf of its members. Therefore, it asserts itself to be no different than any environmental advocacy group participating in the instant litigation. It also claims it does not meet the legal requirements of being a lobbying group as defined by the Lobbying Disclosure Act, 2 U.S.C. § 1601, *et seq.* It contends that it is active in the rulemaking process and frequently

engages in litigation. A submitted declaration states that *"almost every* UARG document on Duke Energy's privileged log can be traced to a specific litigation matter."* (UARG Brf. at 5, emphasis added [docket no. 183]) The UARG takes the position that it and its members constantly anticipate litigation and every comment UARG attorneys make to members, and vice versa, apparently constitutes attorney-client or work product protected communication because it is an advocacy group.

purpose of seeking reconsideration of, objecting to, or appealing the Order. It asserts a need to intervene alleging that the Order violates the UARG'S attorney-client privilege and work product protection, as well as its First Amendment guarantees of freedom of association to petition the government and advocate ideas. Essentially, the UARG wants to entirely re-litigate the issues by having the opportunity to submit additional evidence to support Duke Energy's previously filed motion for a protective order.

Rule 24 provides for two types of intervention. Rule 24(a) provides for intervention as of right "when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest." In such a situation, intervention should be granted "unless the applicant's interest is adequately represented by existing parties." Finally, and most importantly, the application to intervene must be timely. *Houston General Ins. Co. v. Moore,* 193 F.3d 838, 839 (4th Cir.1999).

Issues relating to attorney-client privilege and work product protection for documents may constitute a sufficient interest for purposes of Rule 24(a). *United States v. AT & T,* 642 F.2d 1285, 1292 (D.C.Cir.1980). The United States does not contest this, but asserts that the UARG's participation is unnecessary because Duke Energy adequately protects the UARG's interests, which are really co-extensive with the interests of its members, including Duke Energy. While conceivably one party to a joint defense association might have interests different from the association, that does not appear to be true in this case.

The record amply reveals that Duke Energy and the UARG are actively working and cooperating with one another in general and, in particular, with respect to the discovery issues involved in this case. The UARG argues that it has an interest different from Duke Energy because it seeks to avoid any precedential impact of the April 11, 2003 decision or any *stare decisis* effects which may flow therefrom to other litigation in which the UARG documents may be sought from other members of the association. However, the April 11, 2003 Order only applies to the motion for a protective order and the documents involved in this case. It does not control motions before other courts.[2] Whether other courts may choose to adopt the analysis of the April 11, 2003 Order is immaterial. Such action does not constitute *stare decisis* so as to supply the UARG with an interest to intervene in this action. The UARG also asserts that its First Amendment rights serve as a sufficient interest to allow intervention. As will be discussed later, Duke Energy necessarily shares that interest and, moreover, the UARG fails to establish that the April 11th Order in any way impinges upon an important First Amendment right.

Not only are the UARG's interests adequately protected by Duke Energy, but also the application is not timely because it is made after the Court has ruled on the issue. *Gould v. Alleco, Inc.,* 883 F.2d 281, 286 (4th Cir.1989), *cert. denied,* 493 U.S. 1058, 110 S.Ct. 870, 107 L.Ed.2d 953 (1990). The UARG points out that the case has not yet gone to trial and, therefore, no one would be prejudiced by its intervention. However, summary judgment motions have been decided and the case is on the verge of being set for trial. Plaintiff legitimately fears that further delay in obtaining the evidence will deprive it from using the evidence.

The UARG seeks to excuse the untimeliness by arguing that the ruling was unexpected because other courts which have considered similar issues denied the government's motion to compel. The Court rejects the excuse. To do otherwise is to al-

---

2. It should also be pointed out that the UARG's own briefing shows that the district court in the Southern District of Illinois ruled on a motion to compel documents obtained from the UARG by another power company and upheld the attorney-client privilege and work product protection, *citing United States v. Illinois Power, et al.,* Civ. Action No. 99CV833–MJR (S.D. Ill. April 24 & May 19, 2003) (unpublished). *See* UARG's Brf. at 3 (docket no. 213). This clearly demonstrates plaintiff's argument that this Court's Order is not *stare decisis,* but simply involves a ruling concerning a limited number of documents.

low the UARG to sit on the sideline while its members litigate discovery issues and then when a member loses that issue, jump in and require the Court to re-litigate the entire matter anew. This imposes significant prejudice to the other parties and burden on the Court. *Gould,* 883 F.2d 281; *United States v. South Bend Community School Corp.,* 710 F.2d 394, 396 (7th Cir. 1983), *cert. denied sub nom. Brookins v. South Bend Community School Corporation,* 466 U.S. 926, 104 S.Ct. 1707, 80 L.Ed.2d 181 (1984) (attempted intervention after order entered).

This is not a discovery situation where the third party can legitimately claim surprise. Such might occur, for example, where there is a First Amendment challenge to an already issued confidentiality order by a third party unrelated to the litigation. *See* 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1911, n. 25 (Supp.2003) (collecting cases). In contrast, the UARG purports to be actively involved in most of the litigation involving its members and, therefore, is well aware and advised of the necessity that its members file motions for protective orders with respect to joint confidential documents. It is not unfair to charge the UARG with a duty of oversight and a requirement that intervention be timely *before* a decision is made. For the above reasons, the Court concludes that the UARG has not presented a timely Rule 24(a) motion for intervention in order to re-litigate the April 11, 2003 Order.

■ The Court further finds that permissive intervention under Rule 24(b) is, likewise, not available. Rule 24(b) permits intervention upon timely application when authorized by statute or, as is pertinent to this case, "when an applicant's claim or defense in the main action have a common question of law or fact in common." The treatise authors interpret the phrase "common question of law or fact" as relating to the claim or defense of the main action. 7C Wright, *et al., supra,* § 1911, at 60 (Supp.2003). Nevertheless, they recognize that some·courts have allowed third parties to intervene "for the sole purpose of challenging confidentiality orders." *Id.* at 61.

These cases allow permissive intervention even though the issue before the Court concerns an ancillary matter, such as discovery. Arguably, it may be better to allow intervention with respect to ancillary matters under Rule 24(a), rather than to muddy the interpretation waters with respect to permissive intervention under Rule 24(b). Nevertheless, assuming that the UARG is entitled to permissive intervention on an ancillary discovery claim, the Court finds, for reasons previously expressed, that it has failed to satisfy the timeliness requirement which is a prerequisite for both intervention as of right and permissive intervention. *Gould,* 883 F.2d at 286.

### Duke Energy's Motion for Reconsideration

Duke Energy requests the Court to reconsider the April 11, 2003 Order. In its brief, Duke Energy attempts to reargue its position that the documents are not relevant because it will only rely on the statements and actions of state and federal regulators. This purported concession does not negate plaintiff's position that Duke Energy can be charged with receiving fair notice of the meaning of the regulations by a showing that Duke Energy had actual or constructive notice of the meaning. The April 11, 2003 Order discussed the parties' positions with respect to relevancy (*Duke Energy,* 214 F.R.D. at 385). Plaintiff contends the sought after documents will show that Duke Energy understood or should have understood that its renovations may have run afoul of plaintiff's interpretation of the regulations. Duke's argument presents nothing new and reconsideration is denied.

Duke Energy's other ground for reconsideration relies on all of the motions filed by the UARG. While normally such tactics are discouraged as an attempt to avoid the briefing page limits contained in the Local Rules, this case is an exception because the UARG has been denied intervention, in part, based on the fact that its interests will be adequately represented by Duke Energy. Therefore, out of an abundance of caution, the Court will consider all of the UARG'S motions as if they

had been raised by Duke Energy. The Court further notes that Duke Energy's reply brief violates Local Rule 7.3(h) which limits reply briefs to matters newly raised in the response. For this reason, the Court will not consider Duke Energy's reply.[3]

## UARG'S MOTION FOR A PROTECTIVE ORDER OR TO STAY ENFORCEMENT

■ The UARG moves for a protective order and to stay enforcement of the April 11, 2003 Order.[4] It claims that compelling Duke Energy to produce UARG communications given to Duke Energy infringes on the UARG's First Amendment right as a "legal advocacy group." It argues as follows. The First Amendment guarantees the UARG the right to speak freely, and to advocate ideas and associate with others while petitioning the government for redress, *citing Smith v. Arkansas State Highway Emp., Local 1315*, 441 U.S. 463, 464, 99 S.Ct. 1826, 60 L.Ed.2d 360 (1979). The Order amounts to a compelled disclosure of political associations and beliefs, *citing Brown v. Socialist Workers '74 Campaign Committee*, 459 U.S. 87, 91, 103 S.Ct. 416, 74 L.Ed.2d 250 (1982).

The UARG contends that the documents concern its efforts to participate in Environmental Protection Agency ("EPA") rulemaking proceedings with respect to the Clean Air Act and also judicial challenges to the regulations. It claims the government, through the plaintiff, seeks to chill the UARG's First Amendment right of association by seeking information concerning the UARG's evaluation of the legal implication of federal regulations. In support, it cites a number of cases: *Federal Election Commission v. Machinists Non–Partisan Political League*, 655 F.2d 380, 388 (D.C.Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 397, 70 L.Ed.2d 213 (1981)(seeking all communications among various groups); *Wyoming v. U.S. Department of Agriculture*, 208 F.R.D. 449 (D.D.C.2002)(all information concerning non-parties' efforts to influence federal regulations); *Australia/Eastern U.S.A. Shipping Conference v. United States*, 537 F.Supp. 807 (D.D.C.1982)(information about efforts to influence administrative agency). Those cases are inapposite, in that a wide range of information was sought with respect to parties' political activities or influencing efforts. The information sought in this case is restricted to communications that Duke Energy received from the UARG which would tend to show whether Duke Energy had actual or constructive notice of the meaning of National Source Review ("NSR") regulations and interpretations.

Plaintiff urges the Court to deny the UARG'S assertion of First Amendment rights for several reasons. First, plaintiff points out that a motion for a protective order must be timely. *Brittain v. Stroh Brewery Co.*, 136 F.R.D. 408, 413–414 (M.D.N.C.1991). Even Duke Energy's original motion for a protective order was barely timely because it delayed filing the motion until forced to respond to plaintiff's motion to compel. *Id.* The UARG's motion, filed after the decision and without any legitimate excuse, is·not timely standing on its own, as part of a request to intervene, or as a re-

---

**3.** Duke Energy's reply memorandum does not respond to new material raised by plaintiff but rather attempts to raise new arguments. For the first time, Duke Energy attempts to argue that it was denied an opportunity to support its motion for a protective order because this Court *sua sponte* did not grant it an evidentiary hearing to support the motion for a protective order. The argument will be discussed as it is raised in the UARG's motions.

Duke Energy also argues that many of the challenged documents do not discuss the EPA's interpretation of the National Source Review ("NSR") Regulations and are, therefore, irrelevant. It cites specific documents that it says fall within that category. This argument is untimely. Moreover, if the documents in question truly do

not fall within the scope of the Order, Duke Energy should first consult with plaintiff's counsel to resolve the matter.

**4.** The UARG claims that it is not required to intervene because it has an independent right to simply file a motion for a protective order in this Court pursuant to Fed.R.Civ.P. 26(c). To the extent that it bases its decision on the belief that the discovery order seeks to compel the disclosure of UARG documents, the Court disagrees. Rule 26(c) applies to "a party or ... person from whom the discovery is sought." The April 11, 2003 Order does not seek discovery from the UARG, but only seeks to compel documents which belong to and are in the possession of Duke Energy. They are not UARG documents because the UARG gave them to Duke Energy.

quest for reconsideration. *United States v. Intern., Business Machines Corp.,* 79 F.R.D. 412, 414 (S.D.N.Y.1978)(reconsideration not appropriate without showing court overlooked matters or controlling decisions); *see United States v. International Business Machines Corp.,* 70 F.R.D. 700, 701–702 (S.D.N.Y.1976)(second motion by third party after court decision).

The UARG argues that Duke Energy could not have raised a First Amendment claim and, therefore, the UARG's belated submission should be excused. First, even if correct, that only means the UARG should have attempted to intervene earlier. Second, the UARG fails to show that Duke Energy could not have raised a First Amendment claim. The rights which the UARG seeks to protect stem from the UARG's members' rights of association. *See N.A.A.C.P. v. State of Alabama ex rel. Patterson,* 357 U.S. 449, 459, 78 S.Ct. 1163, 1170, 2 L.Ed.2d 1488 (1958)(Association may assert First Amendment rights of members). The First Amendment protects not only the organization, but the members as well. *International Union, UAW v. National Right to Work Legal Defense & Ed. Foundation, Inc.,* 590 F.2d 1139, 1147 (D.C.Cir.1978).

Finally, the First Amendment does not prohibit discovery into legitimate, relevant matters, even when such discovery may produce a chilling effect on a party's First Amendment rights. *North Carolina Electric Membership Corp. v. Carolina Power & Light Co.,* 666 F.2d 50, 53 (4th Cir.1981)(citing *Herbert v. Lando,* 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979)). As the Supreme Court made clear in *Herbert,* the answer is not to suppress such evidence, but rather to exercise judicial discretion by providing protection short of suppression. 441 U.S. at 177, 99 S.Ct. 1635. The UARG fails to offer any proposal for protection less than suppression.

Of course, if the scope of the lawsuit and the discovery goes to the heart of the group's associational activities, then the Court will employ a higher level of scrutiny. *Wilkinson*

*v. F.B.I.,* 111 F.R.D. 432, 436 (C.D.Cal.1986)(collecting cases). And, the level of scrutiny markedly increases when the discovery is for membership lists. *Wyoming v. U.S. Dept. of Agr.,* 239 F.Supp.2d 1219, 1237 (D.Wyo.2002). That is not the situation here.

The discovery here is limited and for a specific purpose other than inquiry into the UARG'S associational activities. It is not a general fishing expedition. *See Federal Election Commission,* 655 F.2d at 388. The UARG's claim that enforcement of the discovery order could likely cause current members to withdraw is conclusory. There is no showing that this would be as a result of fear that exposure of their ideas or beliefs could lead to some type of harm, harassment, or reprisal.[5] *Wyoming v. U.S. Dept. of Agr.,* 239 F.Supp.2d at 1236 (citing *N.A.A.C.P. v. Alabama,* 357 U.S. at 462–463, 78 S.Ct. 1163). Self-serving declarations are not sufficient. *Id.* at 1238. For all the above reasons, the UARG'S motion for a protective order will be denied. In addition, the UARG's request for a stay of enforcement in order to protect its fundamental rights will be denied for being moot.

### UARG's Motion for Reconsideration of the April 11, 2003 Order and Motion for In Camera Inspection and Evidentiary Hearing

The UARG seeks reconsideration of the April 11, 2003 Order. Initially, this was pursuant to Fed.R.Civ.P. 59(e) and 60, and the Court's inherent authority. However, plaintiff objected to reconsideration under Rules 59(e) and 60 on the grounds that those rules apply to final decisions, not interlocutory orders, and, in any event, that the provisions of those rules have not been met. Plaintiff is correct, those rules apply after final judgment. *Fayetteville Investors v. Commercial Builders Inc.,* 936 F.2d 1462, 1472 (4th Cir. 1991).

A Court may revisit interlocutory orders at any time prior to final judgment

---

**5.** Of course, the members might find the UARG less attractive if all communications are not deemed privileged or protected. However, those

concerns do not implicate fear of exposure of ideas or beliefs which is the focus of the First Amendment.

under Fed.R.Civ.P. 54(b) or its inherent authority. *Id.; Gordon and Breach Science Publishers S.A. v. American Institute of Physics,* 905 F.Supp. 169, 177–78 (S.D.N.Y. 1995); *Acme Printing Ink. Co. v. Menard, Inc.,* 891 F.Supp. 1289, 1295 (E.D.Wis.1995). Reconsideration is appropriate when justice requires it (*Fayetteville,* 936 F.2d at 1473), but it is discretionary, not automatic. The court in *Fidelity State Bank, Garden City, Kan. v. Oles,* 130 B.R. 578 (D.Kan.1991), provides a thorough explanation of the considerations which underlie a motion for reconsideration of an interlocutory order:

> A motion to reconsider is appropriate when the court has obviously misapprehended a party's position or the facts or applicable law, or when the party produces new evidence that could not have been obtained through the exercise of due diligence. *Anderson v. United Auto Workers,* 738 F.Supp. 441, 442 (D.Kan.1990); *Taliaferro v. City of Kansas City,* 128 F.R.D. 675, 677 (D.Kan.1989). An improper use of the motion to reconsider "can waste judicial resources and obstruct the efficient administration of justice." *United States ex rel. Houck v. Folding Carton Administration Committee,* 121 F.R.D. 69, 71 (N.D.Ill.1988). Thus, a party who fails to present his strongest case in the first instance generally has no right to raise new theories or arguments in a motion to reconsider. *Renfro v. City of Emporia,* 732 F.Supp. 1116, 1117 (D.Kan.1990); *Butler v. Sentry Insurance,* 640 F.Supp. 806, 812 (N.D.Ill.1986). The court is not required to supply the rationale that the parties were unable to find. *See Drake v. City of Fort Collins,* 927 F.2d 1156, 1159 (10th Cir.1991) ("court will not construct arguments or theories for the [litigants] in the absence of any discussion of those issues"). For these same reasons, a court may decline to entertain new arguments raised for the first time in the reply, particularly when the argument involves complex facts or questions. *See, e.g., United States v. Jenkins,* 904 F.2d 549, 554 n. 3 (10th Cir. 1990); *Glad v. Thomas County Nat'l Bank,* No. 87–1299–C, slip op. at 2 (D.Kan. Oct. 10, 1990) (1990 WL 171068).

*Fidelity State Bank,* 130 B.R. at 581; *Carteret Sav. Bank, P.A. v. Compton, Luther & Sons, Inc.,* 899 F.2d 340 (4th Cir.1990)(motion denied when new evidence presented at the reconsideration hearing); *Intern. Business Machines Corp.,* 79 F.R.D. at 414 (reconsideration only if court overlooked matters or controlling decisions).

The UARG does not meet any of the above criteria. The evidence is not new or previously unobtainable, but merely newly submitted. Nor is mere disagreement over the Court's legal analysis sufficient for reconsideration.

In requesting reconsideration, the UARG again asserts that it and its members should be viewed as being one entity so that legal matters of one member become legal matters of the other members with respect to attorney-client privilege and work product protection. The Court previously rejected that argument. *Duke Energy Corp.,* 214 F.R.D. at 387. Instead, the Court found that the documents had to satisfy the joint defense/common interest rule. To do this, Duke Energy had to show an agreement among all members to share the information which relates to an ongoing or contemplated litigation and that contemplated litigation means a palpable threat of litigation. *Id.* at 388.

Duke Energy failed to meet this standard, inasmuch as it submitted a conclusory affidavit; and, the new UARG affidavits are not materially better. For example, the UARG submits another privilege log to the Court. This log now includes a section where a particular document is apparently tied to some related litigation or rulemaking. In fact, some documents are tied to a number of different litigations. It is not clear whether someone reviewed the documents *post hoc* and now states that they contain opinions that would be relevant to the litigation, as opposed to asserting that a specific document was, at the time, actually prepared for all of the specific litigation listed. Some litigation appeared to be years apart from one another. Moreover, the affidavit explaining the privilege log gives the impression that *post hoc* rationalization was used. It states: "each UARG document listed on the privilege log was reviewed to determine whether the docu-

ment could readily be identified as relating to a case or cases in which UARG participated in the past or is currently participating." (Shaw Decl. [Docket No. 180] ) This, in turn, seems to confirm that the UARG is in the business of providing legal advice to all of its members which is shared because these members at some time may likely be involved in similar litigation, and that the members have an interest in knowing how the other members respond to their specific litigation threats. This, however, does not satisfy the standard adopted in the April 11, 2003 Order.

The UARG argues that the documents were not shown to nonmembers, and plaintiff fails to show otherwise. However, the UARG, as the party attempting to establish the privilege, has the burden of showing whether documents were shared or not. *Brittain*, 136 F.R.D. at 413, 416. Plaintiff only has the duty of showing the relevancy of the discovery. *Id.* In any event, even sharing among members could constitute a waiver of privilege, absent Duke Energy's showing of an agreement among all members as a result of a common legal interest in ongoing or contemplated litigation. *Duke Energy,* 214 F.R.D. at 388. Thus, the UARG's new arguments miss the mark.[6]

The UARG complains that the Court should have reviewed the challenged affidavits *in camera* or permitted Duke Energy to amend its privilege log. It also has filed a separate motion for an *in camera* inspection of the documents and an evidentiary hearing. Duke Energy, in its reply brief, complains that the Court gave plaintiff these benefits when plaintiff filed an insufficient motion for a protective order.

It is true that the Court faced some of these same issues when Duke Energy brought a motion to compel and plaintiff

presented a motion for a protective order. There, the similarity ends. The deficiencies the Court finds in Duke Energy's and the UARG's submissions will not be cured by conducting an *in camera* inspection of the documents.

*In camera* inspections have limited usefulness in deciding whether to grant protective orders. In the December 20, 2002 Order involving plaintiff's motion for a protective order, the Court explained:

> ▮t is highly unlikely that the existence of privilege is so readily apparent upon the face of the documents that an uninitiated observer will immediately be able to tell which information is privileged and which is not. *Pete Rinaldi's Fast Foods, Inc. v. Great American Ins. Companies,* 123 F.R.D. 198, 203 (M.D.N.C.1988). Rather, the party must present any *in camera* matters in a reviewable form, such as with a *Vaughn* index. *Id.* This requires that each document be itemized on a list. For each document, if only a part is privileged, a redacted document should be produced. For each document which is redacted in whole or part, there should be given a general factual summary of the document's redacted content and specific factual details supporting the justification for the part being redacted. *Id.* The unredacted document with the redacted information highlighted may be submitted *in camera.* A *Vaughn* index which gives boilerplate conclusions applying to all documents and does not connect the information withheld to specific statements of law and fact is simply insufficient and inadequate. *Tax Analysts v. I.R.S.,* 97 F.Supp.2d 13, 21–22 (D.D.C.2000), *aff'd,* 294 F.3d 71 (D.D.C. 2002).

---

6. The UARG also wants to establish it is not required to register as a lobbying group. This also misses the mark. The Court did not deny Duke Energy's motion for a protective order because it found the UARG association to be a lobbying group. Instead, the Court merely considered the activities of the UARG in order to ascertain whether there was reason to believe that communications could have been shared with others or that they referenced general industry concerns, as opposed to concerns of a specific litigation. This, in turn, is relevant in

order to determine the kind and quality of evidence which Duke Energy or the UARG would be required to present in order to sustain any privilege. The Court would use greater caution in reviewing Duke Energy's affidavits to the extent it appeared that (1) the UARG was not formed in order to meet one specific litigation threat, but was formed to meet many challenges, (2) there might be a lobbying or education component to the association, and (3) there may be involvement with non-members.

(December 20, 2002 Order at 7–8). Neither Duke Energy nor the UARG provide a *Vaughn* index other than the general, conclusory affidavits.

The UARG requests an evidentiary hearing where, essentially, the UARG and Duke Energy could be given a chance to now submit all of the necessary information. Duke Energy implies this should be done because plaintiff was more favorably treated when the Court granted an evidentiary hearing to resolve plaintiff's motion for a protective order. A review of the December 20, 2002 Order setting the hearing shows no such thing. Unlike the UARG or Duke Energy, plaintiff had made substantial progress toward establishing entitlement to a protective order based on the deliberative process privilege. One problem arose, however, because the officials who provided the *Vaughn* index affidavit had merely reviewed samples of the documents. While finding this approach was not improper,[7] it created uncertainty that specific documents would fully qualify for the deliberative process privilege. Because of the inadequacy of *in camera* review to resolve the issue, as explained above, the Court convened a hearing. However, there had already been an establishment of the privilege in general, unlike the situation with the UARG's and Duke Energy's affidavits.

Unlike plaintiff, the UARG and Duke Energy had advance warning of what is required to sustain a motion for a protective order, but chose to ignore it. Duke Energy and the UARG are not being treated unfairly.

The UARG next argues the Court ignored controlling legal authority. It specifically challenges the Court's definition of the requirements necessary to sustain work product protection. The Court used the Fourth Circuit's definition set out in *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray*

*Sheet Metal Co., Inc.*, 967 F.2d 980, 984 (4th Cir.1992), which requires an actual claim or else a potential claim following an actual event or events that reasonably result in litigation. This standard was used for both work product protection and as a requirement for establishing the joint defense/common interest rule. *Duke Energy*, 214 F.R.D. at 388 & 390. The UARG wants the Court to adopt an "inevitable litigation" standard used in the Freedom of Information Act, 5 U.S.C. § 52, cases. *See Judicial Watch, Inc. v. Reno*, 154 F.Supp.2d 17 (D.D.C.2001). The Court finds no reason to believe this standard applies to the work product protection issues contained in this case. Therefore, reconsideration based on this ground is denied.

Finally, the UARG also wants the Court to reconsider and find that documents prepared in contemplation of participating in rulemaking deserve work product protection. The Court declines because the cases cited by the UARG cover situations where there is an actual institution of an investigation so that the threat of litigation is, in fact, imminent.[8]

For the reasons discussed above, the Court will deny Duke Energy's and the UARG's motions for reconsideration and request that the Court conduct an *in camera* inspection of the documents or set the matter for an evidentiary hearing before the Court.

### Duke Energy's Motion for Clarification

Duke Energy seeks clarification of whether the Order covers two documents which were not communicated between Duke Energy and anyone outside of Duke Energy. One of the documents is a draft internal legal memorandum to provide legal advice on compliance issues to Duke Energy management. The Court has reviewed the document and finds that it constitutes attorney-client pro-

---

7. The Order stated: "By necessity, such persons must rely on assistants and attorneys to do the bulk of the review." Other courts have also adopted this approach. *See Landry v. F.D.I.C.*, 204 F.3d 1125, 1135–36 (D.C.Cir.), *cert. denied*, 531 U.S. 924, 121 S.Ct. 298, 148 L.Ed.2d 239 (2000)(discussing cases). (December 20, 2002 Order at 5)

8. *Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) (administrative investigation); *Kent Corp. v. N.L.R.B.*, 530 F.2d 612, 615, 623 (5th Cir.1976)(NLRB investigatory reports to determine whether unfair labor charges had merit); *United States v. Brown*, 478 F.2d 1038 (7th Cir.1973); *Hercules, Inc. v. Exxon Corp.*, 434 F.Supp. 136, 151–152 (D.Del.1977)(documents in anticipation of proceeding before Board of Patent Interferences).

tected information. Plaintiff does not oppose the privilege being granted to this document.

■ Plaintiff does oppose privilege being given to handwritten notes taken by a Duke Energy in-house attorney during a UARG conference on June 15, 1989. The attorney states in his affidavit that he created his notes in order to provide legal advice to his client, Duke Energy, and in order for Duke Energy to participate in the Seventh Circuit *Wepco v. Reilly* case as *amicus curiae*. The affidavit establishes the maintenance of confidentiality. These facts were overlooked because the document was stapled to another one contained in the privilege log.

The Court rejects plaintiff's first argument that the request by Duke Energy is untimely. This isolated mistake does not indicate any general lack of diligence. The Court does agree with plaintiff that the documents do not involve confidential attorney-client communications. However, the Court disagrees that the notes do not constitute work product because specific litigation was not identified.

The Court finds that the affidavit identified the *Wepco* litigation and states that the document was prepared for the *amicus curiae* presentation. While the notes arose from a non-privileged discussion by a speaker, the notes themselves reveal the attorney's opinion. Plaintiff may be correct in arguing that what was said at that conference is not protected information. Nevertheless, the notes created therefrom by the attorney for the purpose of a specific litigation are clearly protected opinion work product. *In re Allen,* 106 F.3d 582, 608 (4th Cir.1997), *cert. denied sub nom. McGraw v. Better Government Bureau, Inc.,* 522 U.S. 1047, 118 S.Ct. 689, 139 L.Ed.2d 635 (1998). Therefore, that document retains its protection and the Court grants Duke Energy's motion for clarification by holding that both documents which are the subject of that motion remain protected against disclosure.

### Motion to Stay

Duke Energy requests that this Court stay its order while it is further litigated. However, this case has advanced far along the Court's docket. Summary judgment motions have already been decided and trial is imminent. Plaintiff suggests an alternative solution rather than merely staying enforcement of the order. It suggests that if a stay be granted, that the documents can be disclosed under the parties' protective order to plaintiff's litigation counsel. This would allow plaintiff to prepare for litigation and, yet, preserve the confidentiality of the documents should Duke Energy wish to further pursue this matter. This appears to be a legitimate compromise and the Court will adopt that solution. Therefore, it will grant a stay of enforcement in order to allow Duke Energy to file objections or to appeal the order, but Duke Energy will supply the documents to plaintiff under the parties' protective order, wherein only plaintiff's trial counsel will have access to the documents and they may only be used in preparation for this litigation.

IT IS **THEREFORE ORDERED** that Duke Energy Corporation's motion for Reconsideration (docket no. 169) of the April 11, 2003 Order is denied.

IT IS **FURTHER ORDERED** that Duke Energy Corporation's motion for clarification of the Court's April 11, 2003 Order (docket no. 171) is granted and the two documents need not be disclosed.

IT IS **FURTHER ORDERED** that Duke Energy Corporation's motion to stay this Court's April 11, 2003 Order (docket no. 175) is granted in part, but Duke Energy shall supply the documents to plaintiff's litigation counsel only and under the terms of the parties' Protective Order and the documents may only be used in preparation for trial pending further orders of the Court.

IT IS **FURTHER ORDERED** that the Utility Air Regulatory Group's motion for a protective order and to stay compliance with the Court's April 11, 2003 Order (docket no. 177) is denied.

IT IS **FURTHER ORDERED** that the Utility Air Regulatory Group's motion for reconsideration of the April 11, 2003 Order (docket no. 179) is denied.

IT IS **FURTHER ORDERED** that the Utility Air Regulatory Group's motion for a protective order, for an *in camera* inspection,

**478**

and for an evidentiary hearing (docket no. 181) is denied.

**IT IS FURTHER ORDERED** that the Utility Air Regulatory Group's motion to intervene (docket no. 182) for the limited purpose of objecting to and/or appealing the April 11, 2003 Order (docket no. 164) is denied.